GALLAGHER & ASCHER COMPANY v. UNITED STATES (No. 5159)*

United States Court of Customs and Patent Appeals,
December 23, 1964

*Barnes, Richardson & Colburn (Joseph Schwartz,* of counsel) for appellant.
*John W. Douglas,* Assistant Attorney General, *Alan S. Rosenthal, Martin Jacobs,* for the United States.

[Oral argument November 3, 1964, by Mr. Schwartz and Mr. Jacobs]

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, JR., Associate Judges

---

*C.A.D. 849.

ALMOND, Judge, delivered the opinion of the court:

Gallagher & Ascher Co. appeals from a judgment of the United States Customs Court, Second Division, Abs. 68052, overruling its protest filed against the collector's assessment of duty on imported auxiliary heaters at 13¾ per centum ad valorem. The merchandise was classified under paragraph 353 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, as "Articles having as an essential feature an electrical element or device, such as * * * heaters, * * * wholly or in chief value of metal, and not specially provided for."

Appellant contends that the auxiliary heaters should have been classified under paragraph 369 (c) of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, as parts of automobiles, dutiable at the rate of 10½ per centum ad valorem.

The issue, therefore, is whether the merchandise was properly classified under paragraph 353 of the Tariff Act as articles having as an essential feature an electrical element or device rather than under paragraph 369 (c) as parts of automobiles.

Paragraph 353 provides:

Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for * * *__ 13¾% ad val.

Paragraph 369 (c) provides:

Parts (except tires and inner tubes and except parts wholly or in chief value of glass), finished or unfinished, not specially provided for, for any of the articles described in item 369 (a) or 369 (b) in this Part_____ 10½% ad val.

The facts are apparently not in dispute. As found by the Customs Court, they are in material substance as follows:

The record, consisting of the testimony of one witness called on behalf of the appellant and a pamphlet describing the nature and function of the imported heaters, discloses that the heaters are installed in Volkswagen vehicles and operate by the combustion of gasoline piped from the fuel tank of the automobile to produce heat which is brought inside the vehicle. The heat thus produced serves the purpose of warming the vehicle, defrosting the windows and windshield and removing condensed moisture from same. The heater functions independently of the engine and can produce heat whether or not the engine is running. It requires 2½ to 5 hours to install, depending upon the model of the car. Installation requires attach-

ing a fuel line to the fuel tank, installing a socket of the heater body on a panel and connecting the electrical switches and wires to the electrical system of the car from and through which electrical current is derived to operate the heater. It is necessary to cut out some parts of the panels to provide openings for the ducts. The Volkswagen is equipped with a conventional heater at the factory. In other words, the latter is standard equipment. The heater under consideration here is an optional feature which may, upon request, be installed at the factory at additional cost over and above the basic price of the vehicle. The conventional heater provides heat only when the engine is running and after the engine has generated heat, which is blown by air over the warm engine and conducted into the occupied portion of the vehicle. The witness gave his opinion that the conventional heater did not provide sufficient heat to enable one to safely operate the vehicle in the area with which he was associated as a distributor of Volkswagens in the States of Illinois, Iowa, Wisconsin, Minnesota, North Dakota and South Dakota, and that in any cold climate the heater in controversy would be necessary for the safe operation of the vehicle, admitting however that the Volkswagen can and does operate without the heater in question and that it bore no relation to the starting and running of the car.

Removal of the extra or additional heater after it has once been installed makes it necessary to seal the holes in the bottom of the car and the different sheet metal parts, close the hole in the gasoline tank, remove the ducts and close the holes in the engine compartment and to the driver's compartment.

The Customs Court stated that the record established that "the involved heaters are dedicated for use in Volkswagen automobiles of various types and have no other use" and that the issue was "whether the imported heaters are accessories or parts of a Volkswagen automobile."

Basing its holding on this court's decision in *United States* v. *Willoughby Camera Stores, Inc.*, 21 CCPA 322, T.D. 46851, the Customs Court held that, upon the record as made, the imported heaters do not constitute a part within the purview of paragraph 369(c) of the Tariff Act of 1930, as modified.

It is a fact, seemingly not in dispute, that the heaters in question have "as an essential feature an electric element or device" and that they are in chief value of metal. ▮ It is axiomatic that the finding of the collector upon which the classification was predicated carries with it a presumption of correctness.

As pointed out by the court below, ▮ whether a given article constitutes a part of another article depends upon the nature of the

14

so-called part and, we might add, to some degree on the function and purpose of the so-called part in its relation to the article to which it attaches or with which it is designed to serve.

The decided cases do not clearly establish any set rule or principle for determination of what constitutes parts of automobiles. █ The particular merchandise itself must be considered in order to make a determination as to whether the imported merchandise falls within the purview of the parts provisions herein involved of paragraph 369(c), as modified.

Appellant relies upon *United States* v. *Pompeo*, 43 CCPA 9, C.A.D. 602, wherein the merchandise consisted of superchargers for Ford and Austin automobiles. The court sustained the claim of the importer that the superchargers were parts of automobiles under paragraph 369(c) distinguishing the factual situation there presented from that disclosed by *Willoughby*.

In the instant case, the court below, in predicating its decision on *Willoughby*, stated the rule therein enunciated that:

* * * a "part" of an article is something necessary to the completion of that article and that it is an integral, constituent, or component part, without which the article to which it is to be joined could not function as such article.

In *Pompeo*, the court distinguished *Willoughby*, saying:

The [Customs] court properly took judicial notice of the fact that numerous innovations have come into use in the automotive field in recent years, such as power steering, automatic transmissions, and power brakes, and felt that each improvement has created what is undoubtedly a new "part" of an automobile, even though not all cars are equipped with such innovations. The court inclined to the view that construing the *Willoughby* case as suggested by the Government would mean that the items covered by the word "parts" would not keep pace with the advancement in the automotive industry.

It is of more than passing interest to note that *Willoughby* was decided in 1933 and *Pompeo* in 1955. Technological progress and advancement in the automotive industry continues with a celerity that renders the above quoted statement more apt today than when it was made.

In further distinguishing *Pompeo* over *Willoughby*, this court continued:

The problem is not whether or not automobiles are customarily manufactured with superchargers, but rather what is the nature and function of the imported superchargers. At the time of importation these superchargers * * * are *dedicated irrevocably for use upon automobiles*. Such being the fact, it is unrealistic to attempt to determine the nature of the superchargers apart from their *undisputed ultimate use*. The *Willoughby* case upon which the Government relies so heavily did not turn upon the fact that the cameras were not designed to operate with tripods. As a matter of fact the court indicates at 21 C.C.P.A. (Customs) 323 that the cameras had "sockets" designed to receive the tripods.

The court considered, rather, the *function performed by the tripod when applied to its ultimate use,* and concluded that in that use it was not a part of a camera. As we understand the *Willoughby* case, it would have made no difference in the result even if the tripods had been imported in physical attachment to the camera. [Emphasis supplied.]

In *Trans Atlantic Company* v. *United States*, 48 CCPA 30, C.A.D. 758, this court expressly limited the rule in *Willoughby* "to fact situations of the precise type which the court there had before it," holding that the present weight of authority is with the case of *United States* v. *Carl Zeiss, Inc.*, 24 CCPA 145, T.D. 48624.

*Trans Atlantic* involved metal brackets for mounting door closers. The issue related to whether or not the brackets should be classified as parts of machines. The brackets were imported and sold as separate items, their only use being for mounting a particular door closer on a door frame. Without use of the brackets the closers would not function efficiently when the latter are mounted on the door frames. The court laid emphasis on the fact that the brackets had but one commercial use, that they were not sold with the door closers when the closer was to be mounted directly on the door but were sold with the door closer only when the door closer was to be mounted on the door frame, thus distinguishing the case from *Willoughby* and bringing it more particularly within the *Zeiss* case. *Zeiss* held that separate view finders were parts of cameras. The cameras as sold were operable and did not require the use of the additional lens nor of the separate view finders. The lens and finder did, however, permit the use of the camera in situations where the original lens and finder would not have been adequate. The court cited the following line of cases as being consistent with the views expressed in *Zeiss:*

*United States* v. *Bosch Magneto Co.*, 13 Ct. Cust. Appls. 569, T.D. 41434. Lamps and horns were held to be parts of automobiles.

*Welte & Sons* v. *United States*, 5 Ct. Cust. Appls. 164, T.D. 34249. Music rolls for pianos with equipment for the mechanical playing of the piano were held to be parts of musical instruments. The pianos, however, were complete musical instruments without the mechanical playing equipment.

*Durbrow & Hearne Mfg. Co.* v. *United States*, 9 Ct. Cust. Appls. 177, T.D. 38001. Sewing machine shuttles used to produce lock stitches for embroidery purposes were held to be parts of sewing machines. The shuttles, however, with other shuttles, served only the ordinary functions of a sewing machine.

*United States* v. *American Steel and Copper Plate Co.*, 14 Ct. Cust. Appls. 139, T.D. 41673. Halftone screens for use in ordinary cameras were held to be parts of the cameras. The cameras could be used without the screens.

*Stoeger* v. *United States*, 15 Ct. Cust. Appls. 291, T.D. 42472. A 32-shot magazine drum designed for use with a regular 9-shot magazine pistol was held to be a part of the pistol. The drum was not necessary to the use of the pistol. It merely afforded a greater number of shots without reloading.

Most significant in the overwhelming weight of its impact on the factual situation instantly presented and the rule in *Willoughby* per se, and as applied by the Customs Court, is this court's summary analysis of the line of cases cited above. This court in *Trans Atlantic* said:

In all of these cases, as in the present case, there was an option on the part of the purchaser of the article to use it either with or without the imported auxiliary devices. When the purchaser elected to use the article with such auxiliary devices, the devices were held in each case to be parts of the article for which they were designed and intended for use. In all these cases the articles could have been used without the imported auxiliary device. In these cases the court considered the function of the auxiliary part when the purchaser elected to use it as a part of the article and did not consider it determinative that the article could function without the auxiliary part.

Here, as in *Pompeo*, the imported articles are dedicated to a sole specific use and "for no other use." Here, as in *Trans Atlantic Company*, the imported article serves a useful function. In *Trans Atlantic* the brackets mounted on the door frame were necessary to the efficient operation of the door closer. Here the record supports the view that the auxiliary heater contributed to the safe and efficient operation of the Volkswagen in frigid temperatures in relation to the comfort of its occupants and in aid of the indispensible safety factor of vision by assisting in the removal of ice from the windshield.

The facts of record that the auxiliary heater was optional equipment; that the Volkswagen came equipped with a conventional heater and that the automobile could be operated without the additional heater, are not of such vital import as to be determinative of the issue. When once attached to the automobile to which it was solely dedicated and in the manner disclosed, and in the performance of the function for which it was designed, it became a part of the automobile within the purview of paragraph 369(c) of the Tariff Act of 1930, as modified.

We have reviewed the cases cited and relied on by the appellee but do not deem them apposite to the situation here presented.

The judgment of the Customs Court is *reversed*.