Slip Op. 00-104

# United States Court of International Trade

<table>
<tr><td>

ROLLERBLADE, INC.,

             Plaintiff,

     v.

UNITED STATES,

             Defendant.

</td><td>

Before: Pogue, Judge

Court No. 97-12-02097

</td></tr>
</table>

[Plaintiff's motion for summary judgment denied. Defendant's motion for summary judgment granted. Judgment entered for Defendant.]

Decided: August 21, 2000

Powell, Goldstein, Frazer & Murphy, (Robert Torresen, Jr., Susan M. Mathews, Leigh Fraiser) for Plaintiff.

David W. Ogden, Assistant Attorney General, Joseph I. Liebman, Attorney-in-Charge, International Trade Field Office, Amy M. Rubin, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice; Sheryl A. French, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service, Of Counsel, for Defendant.

## OPINION

**Pogue, Judge:** Plaintiff, Rollerblade, Inc. ("Rollerblade"), challenges a decision of the United States Customs Service ("Customs") denying Rollerblade's protests filed in accordance with section 514 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1514

(1994). At issue is the proper tariff classification under 19 U.S.C. § 1202 (1994), Harmonized Tariff Schedule of the United States ("HTSUS"), of Rollerblade's imports of certain roller skating protective gear.

Rollerblade claims that the subject merchandise is classifiable under subheading 9506.70.2090, HTSUS (1996), covering:

> Articles and equipment for general physical exercise, gymnastics, athletics, other sports (including table-tennis) or outdoor games, not specified or included elsewhere in this chapter; swimming pools and wading pools; parts and accessories thereof: . . . Ice skates and roller skates, including skating boots with skates attached; parts and accessories thereof: Roller skates and parts and accessories thereof: . . . Other

Goods classifiable under subheading 9506.70.2090, HTSUS, were subject to duty-free entry in 1996, the year in which the subject imports were entered in the port of Minneapolis.

Customs classified the merchandise under a residual or "basket" provision, subheading 9506.99.6080, HTSUS, covering:

> Articles and equipment for general physical exercise, gymnastics, athletics, other sports (including table-tennis) or outdoor games, not specified or included elsewhere in this chapter; swimming pools and wading pools; parts and accessories thereof: . . . Other: . . . Other: . . . Other: . . . Other

Goods classifiable under subheading 9506.99.6080, HTSUS, were subject to a general rate of duty of 4.4 % ad valorem in 1996.

Jurisdiction is predicated on 28 U.S.C. § 1581(a)(1994);

therefore, Customs' classification is subject to de novo review pursuant to 28 U.S.C. § 2640 (1994).  This action is before the Court on summary judgment motions made by Rollerblade and Defendant, the United States, pursuant to USCIT Rule 56.[1]  It has been designated a test case pursuant to USCIT Rule 84.

## Standard of Review

Under USCIT Rule 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  USCIT R. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

---

[1]Rollerblade contends that the United States' summary judgment cross-motion should be considered a response to Rollerblade's summary judgment motion rather than a cross-motion for summary judgment, because the United States filed its cross-motion after the deadline had passed on the Court's Scheduling Order for the filing of dispositive motions.  See Pl.'s Reply to Def.'s Resp. at 1 n.1.  The parties did not, however, specify in the Scheduling Order that all dispositive motions must be filed concurrently.  The practice of combining the cross-motion for summary judgment with the party's response to the original motion for summary judgment is an efficient use of court resources.  The Court accepts the United States' cross-motion for summary judgment as such.

The Court must address whether Customs' classification determination is reviewable as a matter of law. The Court analyzes a Customs classification issue in two steps: "first, [it] construe[s] the relevant classification headings; and second, [it] determine[s] under which of the properly construed tariff terms the merchandise at issue falls." Bausch & Lomb v. United States, 148 F.3d 1363, 1365 (Fed. Cir. 1998)(citing Universal Elecs. v. United States, 112 F.3d 488, 491 (Fed. Cir. 1997)). Whether the subject merchandise is properly classified is ultimately a question of law. See id. Summary judgment of a classification issue is therefore appropriate "when there is no genuine dispute as to the underlying factual issue of exactly what the merchandise is."[2]  Id.

Here, the parties agree that "[t]he imported merchandise consists of Rollerblade protective gear for in-line skating,

_____

[2]Following the Federal Circuit's holding in Mead Corp. v. United States, 185 F.3d 1304, 1306-07 (Fed. Cir. 1999), cert. granted, 68 U.S.L.W. 3566 (U.S. May 30, 2000)(No. 99-1434), the Court does not afford the deference articulated in Chevron U.S.A. Inc. v. Natural Resources Defense Council, 467 U.S. 837, 843-45 (1984), to Customs' standard classification rulings. Moreover, although there is a statutory presumption of correctness, see 28 U.S.C. § 2639(a)(1), that attaches to Customs' classification decisions, that presumption is not relevant where the Court is presented with a question of law in a proper motion for summary judgment, see Universal Electronics, 112 F.3d at 492.

including elbow pads, knee pads and wrist guards."[3]    Pl.'s
Statement Pursuant to Rule 56(i) ("Pl.'s Stmt.") at ¶ 1; see also
Def.'s Resp. to Pl.'s Stmt. at ¶ 3.   Thus, Rollerblade and the
United States simply disagree as to how the merchandise should be
classified.    Summary judgment of the classification issue is
therefore appropriate.

**Discussion**

The HTSUS consists of (A) the General Notes; (B) the General
Rules of Interpretation; (C) the Additional U.S. Rules of
Interpretation; (D) sections I to XXII, inclusive (encompassing
chapters 1 to 99, and including all section and chapter notes,
article provisions, and tariff and other treatment accorded
thereto); and (E) the Chemical Appendix.

General Rule of Interpretation ("GRI") 1 for the HTSUS
provides that, "for legal purposes, classification shall be
determined according to the terms of the headings and any relative
section or chapter notes . . . ."   GRI 1, HTSUS; see also Orlando
Food Corp. v. United States, 140 F.3d 1437, 1440 (Fed. Cir. 1998);
Harmonized Commodity Description and Coding System, Explanatory

---

[3]Protective helmets worn by in-line skaters are not at
issue.  See Pl.'s Mot. Summ. J. at 7.

Notes (1ˢᵗ ed. 1986)("Explanatory Notes")[4] at 2 ("[T]he terms of the headings and any relative Section or Chapter Notes are paramount, i.e., they are the first consideration in determining classification."). Here, the parties agree that the subject imports should be classified under heading 9506, HTSUS, but dispute the correct subheading. Therefore, the Court reviews the parties' proposed classifications pursuant to GRI 6. See GRI 6, HTSUS ("For legal purposes, the classification of goods in the subheadings of a heading shall be determined according to the terms of those subheadings and any related subheading notes and, mutatis mutandis, to the [GRIs], on the understanding that only subheadings at the same level are comparable.").

Rollerblade argues that the imported goods are accessories to in-line roller skates, and therefore, are correctly classified under the provision for "roller skates and parts and accessories thereof," in subheading 9506.70.2090. See Pl.'s Mot. Summ. J. at 6. The United States responds that the imported goods are not

---

[4]The Explanatory Notes "provide a commentary on the scope of each heading of the Harmonized [Tariff] System and are thus useful in ascertaining the classification of merchandise under the system." H.R. Conf. Rep. No. 576, 100ᵗʰ Cong., 2ⁿᵈ Sess. 549 (1988). It has long been settled that, "[w]hile the Explanatory Notes do not constitute controlling legislative history, they do offer guidance in interpreting HTS[US] subheadings." Lonza, Inc. v. United States, 46 F.3d 1098, 1109 (Fed. Cir. 1995).

accessories to roller skates, but are rather roller skating equipment. See Def.'s Mot. Summ. J. at 2. Because there is no specific provision for roller skating equipment in the HTSUS, the United States concludes that Customs' classification of the merchandise as "other" sports equipment under the basket provision of subheading 9506.99.6080 was correct. See id. at 2-3; see also HQ 959376 (Sept. 3, 1996)(modifying HQ 957396 (Dec. 12, 1994) and NY 895546 (Mar. 28, 1994)).

Classification of imported merchandise in a basket provision is only appropriate if there is no tariff category that covers the merchandise more specifically. See EM Indus. v. United States, 22 CIT ___, ___, 999 F. Supp. 1473, 1480 (1998)("'Basket' or residual provisions of HTSUS Headings . . . are intended as a broad catch-all to encompass the classification of articles for which there is no more specifically applicable subheading."); EM Chems. v. United States, 20 CIT ___, ___, 923 F. Supp. 202, 206 (1996). See also GRI 3(a), HTSUS ("The heading which provides the most specific description shall be preferred to headings providing a more general description."). Therefore, the Court must first address whether the imported goods are more specifically classifiable under subheading 9506.70.2090, HTSUS. The precise issue before the Court, then, is whether Rollerblade protective gear constitutes

accessories to skates.  If the protective gear does not constitute accessories to skates, then the Court must consider whether Customs correctly classified the subject goods under subheading 9506.99.6080, HTSUS, as "other" sports equipment.

## I.   Whether Rollerblade protective gear constitutes accessories to skates

As recognized by both parties, neither the HTSUS nor its legislative history defines "accessory."  See Pl.'s Mot. Summ. J. at 7-8; Def.'s Mot. Summ. J. at 4.  See also HQ 958924 (June 20, 1996).  "When a tariff term is not defined in either the HTSUS or its legislative history, the term's correct meaning is its common meaning."  Mita Copystar Am. v. United States, 21 F.3d 1079, 1082 (Fed. Cir. 1994)(citing Lynteq, Inc. v. United States, 976 F.2d 693, 697 (Fed. Cir. 1992)).  To determine the common meaning of a tariff term, "[a] court may rely upon its own understanding of terms used, and may consult standard lexicographic and scientific authorities[.]"  Id. (citing Brookside Veneers, Ltd. v. United States, 847 F.2d 786, 789 (Fed. Cir. 1988)).  "Additionally, a court may refer to the Explanatory Notes of a tariff subheading . . . ."  Id. (citing Lynteq, 976 F.2d at 699).

The parties agree that the common meaning of the term

"accessory" should be applied by the Court.  <u>See</u> Pl.'s Mot. Summ.
J. at 7; Def.'s Mot. Summ. J. at 4.  Rollerblade provides several
dictionary definitions, <u>see</u> Pl.'s Mot. Summ. J. at 8-9:

> something extra added to help in a secondary way;
> specif., a) an article to complete one's costume, as a
> purse, gloves, etc. b) a piece of optional equipment for
> convenience, comfort, etc.

<u>Webster's New World Dictionary of the American Language</u> 4 (2d
Concise Ed. 1978).

> 1.a A thing of secondary or subordinate importance;
> adjunct;
> 1.b An object or device not essential in itself but
> adding to the beauty, convenience or effectiveness of
> something else.

<u>Webster's Collegiate Dictionary</u> 7 (2d Ed. 1977).

> A subordinate or supplementary part, object or the like,
> used mainly for convenience, attractiveness, safety, etc.

<u>Random House Webster's Unabridged Dictionary</u> 11 (2d ed. 1998).

> Additional or subordinate thing, adjunct; article not
> absolutely essential that adds to the attractiveness,
> convenience, effectiveness, or safety of something else.

<u>Scribner-Bantam English Dictionary</u> 7 (1991).

> 1.a  A subordinate or supplementary item; an adjunct.
> 1.b  Something non-essential but desirable that
>      contributes to an effect or result.

<u>American Heritage Dictionary</u> 10 (3d ed. 1996).

The United States notes that Customs also interprets the term
"accessory" according to its common meaning, and cites to a

representative Headquarters Ruling:

> We have noted that the term "accessory" is not defined in either the HTSUSA or the Explanatory Notes to the Harmonized System (EN).  We, however, have repeatedly noted that an accessory is, in addition to being an article related to a primary article, is [sic in original] used solely or principally with that article.  We have also noted that an accessory is not necessary to enable the goods with which they are used to fulfill their intended function.  They are of secondary importance, not essential of themselves.  They, however, must contribute to the effectiveness of the principal article (e.g., facilitate the use or handling of the principal article, widen the range of its uses, or improve its operation).  We have also noted that Webster's Dictionary defines an accessory as an object or device that is not essential in itself but adds to the beauty, convenience, or effectiveness of something else.

HQ 958924 (June 20, 1996)(citations omitted)(quoted in Def.'s Mot. Summ. J. at 5).

     While Rollerblade and the United States agree that the common meaning of the term "accessory" should be used, they disagree as to whether the imported merchandise is properly considered accessories to roller skates.  Rollerblade asserts that the protective gear is an accessory to roller skates because it is designed, tested, manufactured and marketed solely for use with in-line skates.  See Pl.'s Mot. Summ. J. at 9.  In sum, the gear has "no function independent of [its] relationship to the skates."  Id. at 10.  Therefore, according to Rollerblade, the gear is "'supplementary,' 'secondary,' 'additional,' 'subordinate,' and otherwise related to

in-line roller skates," and comes within the common meaning of "accessory."  Id. at 9.

The United States argues that the protective gear is not an accessory to roller skates.  According to the United States, Rollerblade's interpretation of the term "accessory" fails to account for a key element of the definition: "'Accessory' is not defined as something that is merely intended to be used at the same time as something else; accessories must serve a purpose subordinate to, but also **in direct relationship** to the thing they 'accessorize.'"  Def.'s Mot. Summ. J. at 5-6 (emphasis in original). The United States asserts further that, although the protective gear is designed, tested, and marketed solely or principally for use at the same time as in-line skates,[5] see Def.'s Resp. to Pl.'s Stmt. at ¶ ¶ 7-10, the protective gear does not relate directly to roller skates because the gear "has no effect on whether or how well the skates themselves will perform."  Def.'s Mot. Summ. J. at 6.

The Court agrees with the United States the common meaning of

---

[5]Rollerblade asserts, and the United States does not dispute, for purposes of the case at bar, that the protective gear is equipment used exclusively for in-line skating.  See Pl.'s Mot. Summ. J. at 14-16; Def.'s Mot. Summ. J. at 2-3.  None of the evidence presented to the Court indicates that the protective gear at issue is generic protective gear that could be used for several sports.

the term indicates that an accessory must relate directly to the thing accessorized.  Indeed, the definitions cited by Rollerblade indicate that an accessory exists only in relation to some other thing.[6]  In addition, the unabridged Oxford English Dictionary defines "accessory" as follows:  "Of things: Coming as an accession; contributing in an additional and hence subordinate degree; additional, extra, adventitious."  Oxford English Dictionary 74 (2d ed. 1989)(emphasis added).  Rollerblade itself states that the required showing under the common meaning of the term accessory is that "an article is 'supplementary,' or 'secondary' or 'subordinate' to some other article."  Pl.'s Mot. Summ. J. at 10 (emphasis added).

Moreover, the language of heading 9506, HTSUS, refers to accessories either in relation to "articles and equipment"

---

[6]See Webster's College Dictionary at 7; Scribner-Bantam English Dictionary at 7; American Heritage Dictionary at 10 (referring to an "adjunct," which is "[s]omething joined to something else and auxiliary to or dependent on it," see The New Shorter Oxford English Dictionary 27 (1993)).

Two of the definitions do not explicitly refer to the relation between an accessory and another thing, but do support the United States' position.  First, the Webster's New World definition does not make sense if read as Rollerblade suggests: "something extra added [to the skater] to help [the skates] in a secondary way."  Webster's New World Dictionary at 4.  What is added to the skater does not help the skates.  Second, the Random House definition continues with the following examples of an "accessory" that emphasize the relationship to another thing: "a spotlight on an automobile or a lens cover on a camera."  Random House Webster's Unabridged Dictionary at 11.

generally, as in subheading 9506.40.00 ("Articles and equipment for table-tennis, and parts or accessories thereof"), or to the specific article named, as in subheading 9506.70, HTSUS ("Ice skates and roller skates, including skating boots with skates attached; parts and accessories thereof"). (Emphases added.) The language of the HTSUS reflects the common understanding that accessories must be "of" or "to" another thing.

Rollerblade has failed to convince the Court that its imported merchandise "accessorizes" roller skates in accordance with the common meaning of that term. Although Rollerblade claims that the protective gear is "otherwise related" to in-line roller skates as articles or equipment, see Pl.'s Mot. Summ. J. at 9, Rollerblade has not succeeded in demonstrating a direct relationship between the protective gear and the roller skates themselves. Rollerblade's arguments rather support the conclusion that the primary relationship is between the protective gear and the activity of roller skating. For example, Rollerblade claims that the protective gear is an accessory because it "is designed, tested and manufactured for use with in-line skates," Pl.'s Mot. Summ. J. at 9, but describes the function of the gear as that of "protect[ing] the wearer from skating related injury," id. The marketing of the protective gear also emphasizes the benefits of the gear to one

engaged in in-line skating.  See id. at 9-10.

Rollerblade's next claim is that "protective gear increases the safety, comfort and effectiveness of in-line roller skates and expands their range of uses."  Id. at 10.  Its analysis, however, supports a different proposition, namely that the protective gear increases the safety, comfort and effectiveness of one engaged in the activity of in-line skating, and allows the participant to engage in expanded forms of the activity.  See, e.g., id. at 12 ("Skaters who wear protective gear are more likely to relax and enjoy their skating experience."); id. ("Protective gear also allows skaters to participate and achieve optimal performance in several new and popular sporting activities . . . .").

By way of contrast, the articles Customs has classified as accessories to roller skates include grind plates, skate lighting systems, skate totes, power straps, lace kits, wheel guards, skate maintenance kits, and skate covers.  See Def.'s Mot. Summ. J. at 8 n. 4, and rulings cited therein.  The United States explains that these items were classified as accessories because "[t]he function of each of these articles is **intimately and directly** related to the articles called 'roller skates,' not simply related to the activity

called 'roller skating.'"[7] Id. (emphasis in original).

The Court finds this distinction persuasive, particularly in light of other types of articles classified by Customs as accessories. Rollerblade and The United States contest the meaning of four Customs rulings, all of which concluded that the subject merchandise was an accessory: 1) NY D83466 (Oct. 28, 1998)(finding that probe covers are an accessory to thermometers); 2) HQ 960514 (Aug. 13, 1997)(finding that cargo-restraint nets are an accessory to automobiles); 3) HQ 953896 (Feb. 2, 1994)(finding that swimming pool test kits are an accessory to swimming pools); and 4) HQ 953713 (Aug. 11, 1993)(finding that brake lever extensions are an accessory to mountain bikes).

Rollerblade cites these rulings in support of two propositions: first, that "an accessory's relationship to the primary article can be to improve its safety," Pl.'s Mot. Summ. J. at 11; and second, that "Customs often classifies articles as accessories even though the articles do not enhance the performance capabilities of the object to which they relate," id. at 14. While both of these

---

[7]The Court declines to comment on exactly how "intimately" the accessory and the principal article must be related. The Court finds only that to be considered an accessory, an article must relate primarily to the thing accessorized, rather than to an activity.

statements are true, both belie the weakness of Rollerblade's argument by emphasizing the relation between the accessory and the primary article.  In the four rulings cited above, each of the items classified as an "accessory" added in some way to the thing accessorized.  In this case, however, the protective gear does not add anything to the skates themselves, but rather improves the in-line skating experience because of an "addition" to the in-line skater in the form of protective gear. The skates themselves continue to function exactly as they would if the skater were not wearing the protective gear.  Thus, because the primary relation between the protective gear and the skates is not between the gear and the skates themselves, the protective gear cannot be considered an accessory to roller skates.[8]

_____

[8]Because the imported items are not accessories, Note 3 to Chapter 95, which requires that "parts and accessories which are suitable for use solely or principally with the articles of this chapter are to be classified with those articles," does not apply.  See Pl.'s Mot. Summ. J. at 16-17.
    Rollerblade argues that "Note 3 does not require that a covered accessory be an accessory to the article, or that it perform some function directly related to the article, merely that it be an accessory suitable for use solely or principally with the article."  Pl.'s Reply to Def.'s Response at 16.  Rollerblade misreads Note 3.  "Suitable for use solely or principally with the article" does not modify the term "accessories" any more than it modifies the term "parts"; rather, the phrase is a clause modifying "parts and accessories," in effect indicating which items properly considered parts and accessories should be classified under Chapter 95.  See NY C85953

## II.      Whether Customs correctly classified the subject goods under subheading 9506.99.6080, HTSUS, as "other" sports equipment

As noted above, the United States argues that the protective gear is not an accessory to roller skates, but is rather roller skating equipment. See Def.'s Mot. Summ. J. at 2. As there is no specific provision for roller skating equipment in the HTSUS, the United States concludes that Customs' classification of the merchandise as "other" sports equipment under the basket provision of subheading 9506.99.6080 was correct. See id. at 2-3.

"Equipment" must also be defined in accordance with its common meaning, as it is defined by neither the HTSUS nor its legislative history. The Court thus turns first to the dictionary definition of "equipment." The American Heritage Dictionary defines "equipment" as "Something with which a person, an organization, or a thing is equipped"; "equip," in turn, is defined as "To supply with necessities such as tools or provisions." The American Heritage Dictionary at 622. The definition of "equipment" includes the following synonym paragraph:

_____

(Apr. 8, 1998)(interpreting Note 3 to mean that "if the articles in question are accessories that are solely or principally used with an article of chapter 95, they must be classified under that heading, regardless of whether they are covered by another provision elsewhere in the tariff schedule.").

      Synonyms: equipment, apparatus, gear, material, outfit, paraphernalia, rig, tackle.  The central meaning shared by these nouns is "the materials needed for a purpose such as a task or a journey": hiking equipment; laboratory apparatus; skiing gear; naval material; an explorer's outfit; <u>sports paraphernalia</u>; a climber's rig; fishing tackle.

<u>Id.</u> (emphasis added).  "Paraphernalia" is defined as "The articles used in a particular activity."  <u>Id.</u> at 1313.

It should be noted that the use of "necessities" and "needed" in these definitions is misleading, as "under the modern view . . . sport equipment includes not only that which is 'necessary' but also that which is specially designed for use in the sport . . . ." <u>Newman Importing Co. v. United States</u>, 76 Cust. Ct. 143, 144, 415 F. Supp. 375, 376 (1976).  Further, Customs has ruled that "[9506's] scope includes the requisites needed in connection with the play of sports and athletics, that being the equipment essential to the play of the game, sport or athletic activity <u>or the equipment designed for use by the player in the training, practice and conduct of these sporting activities</u>."  NY D85049 (Dec. 14, 1998)(emphasis added). The kind of equipment that may properly be classified under 9506 plainly includes protective equipment. <u>See</u> Explanatory Note (B)(13) ("Requisites for other sports and outdoor games . . ., e.g.: (13) <u>Protective equipment</u> for sports or games, e.g., fencing masks and breast plates, elbow and knee pads, cricket pads, shin

guards.")(emphasis added).  <u>See also</u> <u>Slazenger's Inc. v. United States</u>, 33 U.S. Customs Ct. Rpts. 338 (1954)(articles that serve "no other purpose but to aid in a safer and more efficient game . . . are within the designation of 'equipment.'"); HQ 956582 (Mar. 14, 1995)(wrist protectors designed to perform a protective function are not sports clothing, but rather sports are equipment classifiable under 9506).  Thus clarified, it is apparent that the protective gear at issue may properly be considered "equipment."  Rollerblade and the United States do not disagree that the protective gear at issue is specially designed for use in the conduct of the sport of in-line skating.  <u>See</u> Pl.'s Stmt. at ¶¶ 7-10; Def.'s Resp. to Pl.'s Stmt. at ¶¶ 7-10.

Moreover, the protective gear at issue is not equipment that may also be considered an accessory.  <u>See</u> Def.'s Mot. Summ. J. at 6 ("'accessories' may comprise a sub-set of 'equipment' in certain circumstances"). An example of an accessory that could be considered as falling within a sub-set of equipment is a swimming pool thermometer.  In a Headquarters Ruling, Customs explained that, "The thermometers in question . . . contribute to the effectiveness of the principal article by allowing the user to determine the pool or spa's temperature before entering the water.  Thus, the thermometers are accessories."  HQ 952716 (Mar. 3, 1993).  Because a thermometer

is designed for use by the swimmer "in the training, practice and conduct of" swimming, it could be considered sports equipment. But because of the direct relationship between the thermometer and the principle article--the swimming pool--the thermometer is more accurately classified as an accessory. It is in this sense that an accessory may be defined as "a piece of optional equipment for convenience, comfort, etc." Webster's New World Dictionary at 4.

By way of contrast, personal flotation devices, which are also designed for use by the swimmer "in the training, practice and conduct of" swimming, have been routinely classified as sports equipment under Heading 9506. This is justified because of the close connection of this equipment to the activity of swimming, and the lack of a connection to any principle article. See NY E84582 (July 21, 1999)("This swimming aid is designed solely to supply a buoyancy support to the beginning swimmer."); HQ 961988 (Jan. 19, 1999)(modifying NY 829593 (July 25, 1988))("The flotation devices here at issue are apparati for sports . . . ."); NY D85049 (Dec. 14, 1998)("inflatable arm sleeves . . . aid children to develop basic swimming skills"). Like the personal flotation devices, the protective gear at issue is designed primarily to help the skater develop confidence while learning to skate, and protect the skater from injury while engaged in the activity of in-line skating. If

the connection of the secondary article is primarily to the activity rather than to the primary article, the secondary article does not "accessorize" the primary article, but is rather equipment for the activity. Therefore, the protective gear is accurately considered roller skating equipment.[9]

There is no specific tariff provision for roller skating equipment that may not be considered an accessory. This Court will not presume that a drafting error was committed. See, e.g., Brown Group Inc. v. United States, 17 CIT 919, 921 (1993)("If the drafters of the statute erred it is up to Congress to correct the error."). Accordingly, the Court concludes that the proper tariff classification for Rollerblade's protective gear is 9506.99.6080, HTSUS.[10]

---

[9]Based on the foregoing analysis, the Court does not accept Rollerblade's position that the terms "equipment" and "accessory" can be used interchangeably. See Pl.'s Mot. Summ. J. at 17. To do so would render the drafters' use of the two terms superfluous, and would lead to a lack of predictability in determining whether merchandise should be considered "equipment" or an "accessory" for classification purposes. See United States v. Complex Mach. Works Co., 23 CIT __, __, 83 F. Supp. 2d 1307, 1314 (1999)("predictability of results . . . is the essence of our legal system"); Atlas Copco N. Am. v. United States, 17 CIT 1163, 1168, 837 F. Supp. 423, 426-27 (1993)(approving of a specific classification method because "[i]t is conducive to the steady and predictable development of the tariff law").

[10]Finally, the Court notes Rollerblade's argument that GRI 3(a) requires the protective gear be classified as accessories to roller skates because subheading 9506.70.2090 is more specific

## Conclusion

For the foregoing reasons, the Court holds that Customs correctly classified Rollerblade's protective gear under subheading 9506.99.6080, HTSUS.  Accordingly, Rollerblade's motion for summary judgment is denied.  In turn, the United States' motion for summary judgment is granted and judgment is entered for the United States.

_____
Donald C. Pogue
Judge

Dated:    August 21, 2000
          New York, New York

---

than the basket category 9506.99.6080.  See Pl.'s Mot. Summ. J. at 18.  GRI 3 only applies if the goods are, prima facie, classifiable under two or more headings; that is not the case here, since the goods are not classifiable as accessories under 9506.70.2090.