**ROLLERBLADE, INC., Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 01–1049.

United States Court of Appeals, Federal Circuit.

DECIDED: March 5, 2002.

Steven P. Florsheim, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, of New York, NY, argued for plaintiff-appellant. With him on the brief was Stacy L. Weinberg.

Amy M. Rubin, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, International Trade Field Office, of New York, NY, argued for defendant-appellee. With her on the brief were Stuart E. Schiffer, Deputy Assistant Attorney General, and David M. Cohen, Director. Of counsel on the brief was Sheryl A. French, Office of Assistant Chief Counsel, United States Customs Service, of New York, NY.

Before NEWMAN, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and RADER, Circuit Judge.

RADER, Circuit Judge.

Rollerblade, Inc. (Rollerblade) appeals from a summary judgment of the United States Court of International Trade affirming the United States Customs Service (Customs) classification of imported in-line roller skating protective gear under subheading 9506.99.6080 (99.6080) of the Harmonized Tariff Schedules of the United States (HTSUS).* *Rollerblade, Inc. v. United States*, 116 F.Supp.2d 1247 (CIT 2000). Because Customs correctly classified the imports, this court affirms.

I.

The imports in this case are in-line roller skating protective gear, such as knee

---

\* References to the HTSUS throughout this opinion are to the 11th Edition published in 1999. *See* The Harmonized Tariff Schedules of the United States (1999), U.S. Customs Serv., *available at http://www.customs.gov/download/htsusa/htsusa.pdf*.

pads, elbow pads, and wrist guards. Customs classified the imported protective gear as residual "other" sports equipment under subheading 99.6080 of the HTSUS, which carries a duty rate of 4% *ad valorem:*

> 9506 Articles and equipment for general physical exercise, gymnastics, athletics, other sports (including table-tennis) or outdoor games, not specified or included elsewhere in this chapter; swimming pools and wading pools; parts and accessories thereof:
>
> . . .
>
> 9506.99 Other
>
> . . .
>
> 9506.99.60 Other
>
> . . .
>
> 9506.99.6080 Other

Rollerblade appealed to the Court of International Trade, arguing that Customs should have classified the protective gear as "accessories" under subheading 9506.70.2090 ("70.2090"). HTSUS subheading 70.2090 carries a 0% duty rate:

> 9506 Articles and equipment for general physical exercise, gymnastics, athletics, other sports (including table-tennis) or outdoor games, not specified or included elsewhere in this chapter; swimming pools and wading pools; parts and accessories thereof:
>
> . . .
>
> 9506.70 Ice skates and roller skates, including skating boots with skates attached; parts and accessories thereof:
> 9506.70.20 Roller skates and parts and accessories thereof
>
> . . .
>
> 9506.70.2090 Other

Rollerblade sought this "accessory" classification because the protective gear was designed, tested, manufactured and marketed solely for use with in-line roller skates. Because the protective gear bore no direct relationship to roller skates, the Government argued that the imports were not accessories to that defining article.

The Court of International Trade affirmed the Customs classification based primarily on its interpretation of the dictionary meaning of the term "accessory." *Rollerblade,* 116 F.Supp.2d at 1253. According to the trial court, an accessory under subheading 70.2090 must be "of" or "to" the article (roller skates) listed in the heading, not "of" or "to" the activity (roller skating) for which the article is used. *Id.* The trial court found that the protective gear had a direct relationship to the activity of roller skating, but not to the HTSUS heading, namely roller skates. Hence, the trial court affirmed Custom's refusal to classify Rollerblade's protective gear under subheading 70.2090 as an "accessory" to roller skates. *Id.* at 1254–55. Moreover, on summary judgment, the Court of International Trade concluded that Customs properly classified the protective gear under the residual "other" [sports equipment] subheading 99.6080. *Id.* at 1257.

Rollerblade timely appealed to this court, which has exclusive appellate jurisdiction. 28 U.S.C. § 1295(a)(5) (1994). Rollerblade argues that the protective gear constitutes "parts" to the roller skates because it contributes to the safe and effective operation of the in-line roller skates.

## II.

■■■ This court reviews summary judgment "for correctness as a matter of law, deciding *de novo* the proper interpretation of the governing statute and regulations as well as whether genuine issues of material fact exist." *Texaco Marine Servs., Inc. v. United States,* 44 F.3d 1539, 1543 (Fed.Cir.1994) (quoting *St. Paul Fire & Marine Ins. Co. v. United States,* 6 F.3d 763, 767 (Fed.Cir.1993)). In the context of

this case, however, this court defers to the contested Customs classification. Although not entitled to *Chevron* deference (*see Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)), a Customs classification receives some deference in accordance with *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944). *United States v. Mead Corp.*, 533 U.S. 218, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001). Furthermore, under 28 U.S.C. § 2639(a)(1), "a classification of merchandise by Customs is presumed to be correct." *Mita Copystar Am. v. United States*, 21 F.3d 1079, 1082 (Fed.Cir.1994). Thus, "the burden of proof is upon the party challenging the classification." *Mita Copystar Am.*, 21 F.3d at 1082 (citing *Jarvis Clark Co. v. United States*, 733 F.2d 873, 876 (Fed.Cir.1984)).

■ Classification of goods under the HTSUS entails both ascertaining the proper meaning of specific terms in the tariff provision and determining whether the merchandise subject to tariffs comes within the description of those HTSUS terms. *Sports Graphics, Inc. v. United States*, 24 F.3d 1390, 1391 (Fed.Cir.1994). The meaning accorded HTSUS terms presents a question of law, which this court reviews without deference. *Rocknel Fastener, Inc. v. United States*, 267 F.3d 1354, 1356 (Fed. Cir.2001). When reviewing whether the imports fit within those terms, this court uses a clear error standard. *Universal Elecs., Inc. v. United States*, 112 F.3d 488, 491 (Fed.Cir.1997).

■ When the HTSUS does not define a tariff term, the term receives its "common and popular meaning." *E.M. Chems. v. United States*, 920 F.2d 910, 913 (Fed.Cir.1990). This court presumes the common meaning of a term used in commerce to be the same as its commercial meaning. *Simod Am. Corp. v. United States*, 872 F.2d 1572, 1576 (Fed.Cir.1989).

To determine a term's common meaning, a court may consult "dictionaries, scientific authorities, and other reliable information sources." *C.J. Tower & Sons v. United States*, 69 C.C.P.A. 128, 673 F.2d 1268, 1271 (1982).

The General Rules of Interpretation (GRI) of the HTSUS govern the classification of goods within HTSUS. The GRI bases proper classification under HTSUS on the heading or subheading terms. GRI 1 provides: "[f]or legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes." Similarly, GRI 6 states: "[C]lassification of goods in the subheadings of a heading shall be determined according to the terms of those subheadings and any related notes and, *mutatis mutandis*, to the above rules."

■ In this case, subheading 70.2090 recites "[r]oller skates and parts and accessories thereof" (emphasis added), and not "*roller skating* and accessories thereof." In other words, subheading 70.2090 refers to an article (roller skates), not to an activity (roller skating). The subheading also covers parts of that article, such as wheels or laces for the skates. Thus, the subheading language specifically addresses roller skates and their parts and accessories. The language does not embrace every accessory associated with the broader activity of roller skating.

■ Like the trial court, this court also observes that HTSUS offers no definition for the term "accessory." Thus, the trial court correctly consulted the common (dictionary) meaning of the term. *See E.M. Chems.*, 920 F.2d at 913. As the Court of International Trade found, dictionary definitions indicate that an "accessory" must bear a direct relationship to the primary article that it accessorizes. In this case, under subheading 70.2090, the article accessorized is roller skates, not the general

activity of roller skating. Moreover, as found by the trial court, the protective gear lacks a direct relationship to the roller skates. The protective gear does not directly act on the roller skates at all. Unlike a roller skate part or accessory, the protective gear does not directly affect the skates' operation. Thus, based on the common meaning of "accessory" and the language of subheading 70.2090, this court sustains the trial court's conclusion that Rollerblade's imported protective gear is not a roller skate accessory.

Before the Court of International Trade, Rollerblade contended solely that their protective gear was an accessory to roller skates. Rollerblade now argues for the first time that the protective gear is, alternatively, "parts" of the roller skates. Rollerblade would classify the protective gear as roller skate parts because it contributes to the safe and effective operation of the skates and functions by design solely with the skates. Because the terms "parts" and "accessories" appear in the same phrase under subheading 70.2090, this court, in its discretion, entertains this new argument. *See Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976); *Nat'l Ass'n of Mfrs. v. Dep't of Labor,* 159 F.3d 597, 605–06 (D.C.Cir. 1998).

A "part" is "an essential element or constituent; integral portion which can be separated, replaced, etc." *Webster's New World Dictionary* 984 (3d College Ed. 1988). Thus, based on the common meaning, the term "part," like the term "accessory," must have a direct relationship to the primary article, rather than to the general activity in which the primary article is used. Again, the protective gear in this case has a relationship to the activity of roller skating, and not directly to the roller skates.

In *Trans Atlantic Co. v. United States,* this court's predecessor held that brackets mounted on the door frame were parts of a door closer because they were necessary to the efficient operation of the door closer. 48 C.C.P.A. 30 (1960). Likewise, in *Gallagher & Ascher Co. v. United States,* our predecessor court noted the purpose of an auxiliary heater in an air cooled automobile: "[T]he auxiliary heater contributed to the safe and efficient operation of the Volkswagen in frigid temperatures in relation to comfort of its occupants and in aid of the indispensable safety factor of vision by assisting in the removal of ice from the windshield." 52 C.C.P.A. 11, 16 (1964). The *Gallagher* court then held: "When once attached to the automobile to which it was solely dedicated and in the manner disclosed, and in the performance of the function for which it was designed, [the auxiliary heater] became a part of the automobile within the purview of paragraph 369(c) of the Tariff Act of 1930, as modified." *Id.*

Unlike *Trans Atlantic* and *Gallagher,* however, Rollerblade's imported protective gear protects the wearer from injuries related to an activity using the article. The imports do not attach to or contact in any way the subheading article, namely roller skates. The imports are not necessary to make the skates themselves work (as were the door brackets), nor are they necessary to make the skates themselves work efficiently or safely (as was the auxiliary heater). At best, the protective gear adds to the comfort and convenience of the wearer while roller skating. Rollerblade attempts to analogize the protective gear to the auxiliary heater in *Gallagher,* which the court found to provide comfort for the automobile passengers. While the auxiliary heater did provide comfort for the passengers, the *Gallagher* court did not rely on that feature to determine the heater's relationship to the automobile. Rather, the court held that the auxiliary heater became a "part" when attached to the

automobile to make the automobile itself safer by removing ice from the windshield. *Id.* Thus, *Trans Atlantic* and *Gallagher* do not apply to this case.

This court recently construed the term "parts" in another Customs classification case. In *Bauerhin Technologies. Ltd. Partnership v. United States,* this court affirmed the Court of International Trade's classification of imported cushioned inserts and canopies for child safety seats. 110 F.3d 774 (Fed.Cir.1997). Although specially designed to fit the child safety seat, the imported insert facilitated an activity (napping) associated with the HTSUS article. For this reason, the import was not a part of the child safety seat. This court thus affirmed Customs' classification of the article as "bedding and similar furnishings." *Id.* at 778. With respect to the canopy, the court determined that it attached to the seat and was sold as a child safety seat "part." In other words, the canopy was marketed as an "attachment" to the child safety seat without any use or purpose independent of that child safety seat. *Id.* Accordingly, this court upheld the Court of International Trade's judgment that required classification of the canopies as "parts." *Id.* at 779.

In this case, however, the protective gear has more in common with the child safety seat inserts. Because in contact with the seat, the cushioned inserts might have had a better case for classification as a "part" than the protective gear in this case. The protective gear is not analogous to the canopy over the child safety seat at all. Unlike the canopy, these imports sell separately from the roller skates. Moreover, the protective gear does not contact the skates at all and does not act directly on the skates. In other words, the roller skates work in the same manner whether the skater wears the protective gear or not. Concurrent use of the protective gear with the roller skates no doubt re-

duces injuries to the skater from the activity of roller skating, but this observation does not make the protective gear "parts" of the roller skates.

After properly excluding subheading 70.2090 as an acceptable classification, Customs chose classification under subheading 99.6080, entitled "other" [sports equipment]. Without a specific provision for this merchandise, Customs correctly classified the merchandise under the most applicable residual basket subheading. *See EM Indus. v. United States,* 999 F.Supp. 1473, 1480 n. 9 (CIT 1998) (" 'Basket' or residual provisions of HTSUS Headings ... are intended as a broad catch-all to encompass the classification of articles for which there is not a more specifically applicable subheading."). In this case, the most applicable heading is 9506, entitled "[a]rticles and equipment for general physical exercise ... gymnastics, athletics, other sports." Subheading 99.6080, entitled "[o]ther," is the so-called catch-all for this provision. The definition offered for "equipment" includes those articles that are necessary and specifically designed for use in athletics and other sports. Rollerblade's imported protective gear fits within this category because it is "equipment" specifically designed for use in the sport of roller skating.

In sum, the Court of International Trade did not err in its determination that Customs properly classified Rollerblade's imported protective gear under the residual subheading 99.6080.

### COSTS

Each party shall bear its own costs.

*AFFIRMED.*