Slip Op. 03 - 67

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - - - - - -x

VANETTA U.S.A. INCORPORATED,                  :

                            Plaintiff, :
                                              Consolidated
                  v.                   :      Court No. 97-01-00117

UNITED STATES,                                :

                            Defendant. :

- - - - - - - - - - - - - - - - - - - -x

<u>Memorandum & Order</u>

[Cross-motions for summary judgment as to
 classification of animal-feed additives
 denied.]


                                    Dated:  June 25, 2003

      <u>Barnes, Richardson & Colburn</u> (<u>James S. O'Kelly</u>) for the
plaintiff.

      <u>Robert D. McCallum, Jr</u>., Assistant Attorney General; <u>John J.
Mahon</u>, Acting Attorney in Charge, International Trade Field Office,
Commercial Litigation Branch, Civil Division, U.S. Department of
Justice (<u>Bruce N. Stratvert</u>); and Office of Assistant Chief
Counsel, International Trade Litigation, U.S. Bureau of Customs and
Border Protection (<u>Joseph M. Spraragen</u>), of counsel, for the
defendant.

            AQUILINO, Judge:  The parties have interposed cross-

motions for summary judgment in this consolidated action, which

contests U.S. Customs Service classification of certain additives

imported from Italy for animal feeds.  While this court's careful,

albeit belated, review of these motions does not lead it to

conclude that such judgment can be entered, they do substantiate,

yet again, the accumulated wisdom encompassed by USCIT Rule 56(d)

that such motions aid in

ascertain[ing] what material facts exist without substan-
tial controversy and what material facts are actually and
in good faith controverted[,]

thereby streamlining preparation for and conduct of the trial on
the remaining material issue(s) of fact.

I

Subsequent to the filing of plaintiff's motion for
summary judgment, the defendant chose to respond with such a motion
of its own. This form of response has precipitated a formal motion
to strike by the plaintiff, which takes the position that defend-
ant's cross-motion "was not timely filed in accordance with the
scheduling order in this case."

That order of the court issued pursuant to USCIT Rules 1
and 16 set a date certain for submission of any dispositive
motions. The plaintiff met the deadline, whereas the defendant
twice moved for, and obtained, formal extensions of time "to
respond to plaintiff's motion for summary judgment". Whereupon the
plaintiff presses that "[i]n neither instance did defendant seek a
modification of the scheduling order or request more time to file
its own motion for summary judgment." Plaintiff's Motion to Strike
Defendant's Motion for Summary Judgment, p. 2.

The precision of this motion to strike is unimpeachable,
but, when faced with a similar challenge by the plaintiff in

Rollerblade, Inc. v. United States, 24 CIT 812, 116 F.Supp.2d 1247

(2000), aff'd, 282 F.3d 1349 (Fed.Cir. 2002), the court determined

to accept "as such" the defendant's cross-motion for summary

judgment on the ground that the

> practice of combining the cross-motion for summary judg-
> ment with the party's response to the original motion for
> summary judgment is an efficient use of court resources.

24 CIT at 813 and 116 F.Supp.2d at 1250, n. 1. Since the motion to

strike at bar does not show any prejudice to the plaintiff as a

result of the nature of defendant's chosen response, this court

discerns no basis for deviation from the determination in Roller-

blade. Indeed, all parties are at liberty to posit motions for

summary judgment whenever, in the exercise of sound analysis, they

come to conclude "that there is no genuine issue as to any material

fact and that the[y are] entitled to a judgment as a matter of

law." USCIT Rule 56(c). Moreover, it has long been the mandate in

an action like this that the court reach "the *correct* result[] by

whatever procedure is best suited to the case at hand." Jarvis

Clark Co. v. United States, 733 F.2d 873, 878, reh'g denied, 739

F.2d 628 (Fed.Cir. 1984) (emphasis in original). Here, that

procedure may well include cross-motions for summary judgment.


II

The court's jurisdiction to hear and decide this matter

is pursuant to 28 U.S.C. §§ 1581(a), 2631(a). Cf. Defendant's

Reply Brief in Support of Motion for Summary Judgment and in

Opposition to Plaintiff's Response, p. 2, n. 3 ("the Government

withdraws its jurisdictional objections previously advanced").

As required by Rule 56, plaintiff's motion for summary

judgment is accompanied by a statement of the material facts as to

which it contends there is no genuine issue to be tried.  Included

therein are the following averments:

4.    The imported merchandise consists of Menadione
      Sodium Bisulfite (hereinafter "MSB"), Menodi-
      one Sodium Bisulfite Complex (hereinafter
      "MSBC"), Menadione Dimethylpyrimidinol Bisulf-
      ite (herein after "MPB")and Menadione Nicotin-
      amide Bilsulfite (hereinafter "MNB").  . . .

5.    The chemical structure of naturally occurring
      Vitamin $K_1$ phylloquinone is 2-methyl-3-phytyl-
      1, 4-naphthoquinone.  . . .

6.    The chemical structure of naturally occurring
      Vitamin $K_2$ menaquinone is 2-methyl-3-all-
      trans-polyprenyl-1, 4-naphthoquinone.  . . .

7.    Vitamin $K_1$ and vitamin $K_2$ are vitamins for
      purposes of the HTSUS and are classified under
      heading 2936, HTSUS.  . . .

                         *   *   *

11.   When MSB, MSBC, MPB or MNB is ingested, the
      menadione in these products is converted into
      a form of vitamin $K_2$, specifically vitamin
      $K_{2(20)}$.  . . .

12.   The principal use of the imported products is
      as a component in animal feeds.  . . .

13.   Customs excluded the imported products from
      classification under heading 2936 because, as
      interpreted by Customs, this heading does not
      include "synthetic substitutes for vitamins".
      . . .

14.   The phrase "synthetic substitute for a vita-
      min" does not appear anywhere in the HTSUS
      statute enacted by Congress.  . . .

15.   Defendant defines "synthetic substitute for a
      vitamin" as "a synthesized chemical compound
      that is not found in nature but has vitamin
      activity.  This differs from a synthetically
      reproduced vitamin whose structure is found in
      nature but has been synthesized from other
      chemicals."  . . .

* * *

17.   The imported MSB was classified by Customs as
      "Ketones and quinones, whether or not with
      other oxygen function, and their halogenated,
      sulfonated, nitrated or nitrosated deriva-
      tives: . . . Halogenated, sulfonated, nitrated
      or nitrosated derivatives: Aromatic: . . .
      Other", under subheading 2914.70.20, HTSUS,
      dutiable at 11% *ad valorem*.  . . .

18.   The imported MSB has the same menadione moiety
      (2-methyl-1, 4-naphthoquinone) as naturally
      occurring Vitamin $K_1$ phylloquinone and natu-
      rally occurring Vitamin $K_2$ menaquinone.  . . .

19.   The SB or sodium bisulfite portion of MSB is
      excreted by the body after ingestion.  . . .

20.   From a nutritional perspective, the menadione
      (2-methyl-1, 4-naphthoquinone) moiety is the
      most important component of MSB.  . . .

* * *

21.   The imported MSBC was [also] classified by
      Customs . . . under subheading 2914.70.20,
      HTSUS, [supra, para. 17,] dutiable at 11% *ad
      valorem*.  . . .

22.   The imported MSBC has the same menadione
      moiety (2-methyl-1, 4-naphthoquinone) as na-
      turally occurring Vitamin $K_1$ phylloquinone and
      naturally occurring Vitamin $K_2$ menaquinone.
      . . .

23.  MSBC is essentially MSB with additional sodium bisulfite added for increased stability. . . .

24.  The SBC or sodium bisulfite complex portion of MSBC is excreted by the body after ingestion. . . .

25.  From a nutritional perspective, the menadione (2-methyl-1, 4-naphthoquinone) moiety is the most important component of MSBC. . . .

* * *

27.  The chemical structure of MPB is 2-methyl-1, 4-naphthoquinone 2-hydroxy-4, 6-dimethylpyrimidine bisulfite. . . .

28.  The imported MPB has the same menadione moiety (2-methyl-1, 4-naphthoquinone) as naturally occurring Vitamin $K_1$ phylloquinone and naturally occurring Vitamin $K_2$ menaquinone. . . .

29.  The PB portion of MPB is excreted by the body after ingestion and has no nutritional value. . . .

30.  From a nutritional perspective, the menadione (2-methyl-1, 4-naphthoquinone) moiety is the most important component of MPB. . . .

* * *

32.  Nicotinamide is also known as niacinamide. . . .

33.  Niacinamide is a vitamin described in heading 2936, HTSUS. . . .

34.  The bisulfite portion of MNB is excreted by the body after ingestion. . . .

35.  The nicotinamide portion is not excreted by the body after ingestion and provides niacin or niacinamide activity. . . .

36.   The nicotinamide portion of MNB is a vitamin,
as described in subheading 2936.29.1530,
HTSUS. . . .

* * *

38.   Defendant is unaware of any uses of MNB as a
component of animal feeds other than as a
source of vitamin K activity and niacin. . . .[1]

The defendant admits without any reservation all but one of these averments.  See Defendant's Response to Plaintiff's Statement of Material Facts as to Which There is No Genuine Dispute, pp. 1-4.  As for that single, enumerated paragraph, 4, supra, the defendant admits it with regard to MSB and MSBC but

[a]vers that none of the imported merchandise is
described on the commercial invoices as MNB, or MPB,
or their equivalents.

Id. at 1, para. 4.  As for defendant's own statement of material facts in support of its cross-motion, the plaintiff admits the following averments contained therein:

2.   MSB, MNB and MSBC are aromatic derivatives of
quinones.

3.   MPB is an aromatic heterocyclic compound
containing a pyrimidine ring.

* * *

5.   Menadione is not the natural precursor of
vitamins $K_1$[] in plants and $K_2$ in bacteria.

---

[1] Plaintiff's Rule 56(i) Statement of Material Facts as to Which No Genuine Dispute Exists (citations in support of each averment omitted).

6.    The Menadione found in nature is not a pro-
      vitamin of Phylloquinone.[2]

In sum, there is agreement between the parties with regard to many of the salient facts.  Hence, the plaintiff also agrees that HTSUS chapter 29 (1994)

> contemplates that some organic chemical products may be
> described in more than one of its headings.  MSB, MSBC,
> MPB and MNB are examples of four such products.

Plaintiff's Memorandum, p. 12.  This means that MSB, MNB and MSBC are at least arguably covered by HTSUS subheading 2914.70.20 and MPB by subheading 2933.59.70, as now posited by the defendant.

Be such concurrence as it may, a court

> first construes the language of the heading, and any
> section or chapter notes in question, to determine
> whether the product at issue is classifiable under the
> heading.  Only after determining that a product is class-
> ifiable under the heading should the court look to the
> subheadings to find the correct classification for the
> merchandise.  *See* GRI 1, 6.  Furthermore, when determin-
> ing which heading is the more specific, and hence the
> more appropriate for classification, a court should
> compare only the language of the headings and not the
> language of the subheadings.  *See* GRI 1, 3.

Orlando Food Corp. v. United States, 140 F.3d 1437, 1440 (Fed.Cir. 1998); Schulstad USA Inc. v. United States, 26 CIT ___, ___, 240 F.Supp.2d 1335, 1338 (2002)("GRI" referring to the HTSUS General

---

[2] Compare Defendant's Statement of Additional Material Facts as to Which There is No Genuine Issue to be Tried, p. 1, paras. 2, 3, 5, 6 with Plaintiff's Response to Defendant's Statement of Additional Material Facts as to Which There is No Genuine Issue to be Tried, paras. 2, 3, 5, 6.

Rules of Interpretation).  As indicated above, the headings favored

by the defendant are as follows:

> 2914 Ketones and quinones, whether or not with
> other oxygen function, and their halogenated,
> sulfonated, nitrated, or nitrosated deriva-
> tives[.]

> 2933 Heterocyclic compounds with nitrogen hetero-
> atom(s) only; nucleic acids and their salts[.]

Headnote 3 to HTSUS chapter 29 provides, however, that

> [g]oods which could be included in two or more of the
> headings of this chapter are to be classified in that one
> of those headings which occurs last in numerical order.

The plaintiff relies on this note in pressing for classification of

its merchandise under heading 2936, to wit:

> Provitamins and vitamins, natural or reproduced by
> synthesis (including natural concentrates), derivatives
> thereof used primarily as vitamins, and intermixtures of
> the foregoing, whether or not in any solvent[.]

With regard to this rubric, the defendant complains that the

plaintiff

> ignores, completely, the Government's key point that
> while the MSB, MSBC, MPB, and MNB undoubtedly are pro-
> vitamins (albeit *artificial* provitamins), they assuredly
> do not reproduce natural provitamins[2], and hence, cannot
> be described, and are not described, by the language of
> Heading 2936, HTSUS, which, by its terms, only covers
> natural vitamins, natural provitamins, reproductions of
> natural vitamins or provitamins, and derivatives of na-
> tural vitamins or provitamins.

Defendant's Reply Brief, pp. 1-2 (emphasis in original, footnote 3

omitted).   Footnote 2 to this reply states in part:

> *Reproduce* means to produce a copy of something.  Inasmuch
> as the HTSUS heading, in issue, Heading 2936, provides
> for "[p]rovitamins and vitamins, natural or reproduced by
> synthesis," clearly, the only provitamins described by
> this language are natural provitamins or reproductions of
> natural provitamins, which MSB, MSBC, MPB, and MNB
> plainly are not.  . . .

Id. at 2, n. 2 (emphasis in original).


                                    III


        This reply by the defendant is the crux of the contro-

versy at bar.  Having studied the affidavits of Dr. John W. Suttie,

Dr. T.M. Frye, and Dr. Mark W. LaVorgna, as well as Binder, Benson

& Flath, Eight 1,4-Naphthoquinones From *Juglans*, 28 Phytochemistry,

pp. 2799-2801 (1989), and Shils & Young, Vitamin K, Modern Nu-

trition in Health and Disease, ch. 14 (7th ed. 1988), proffered by

the plaintiff in support of its instant motion, and having compared

their rather esoteric contents with those of the two affidavits of

Dr. Robert E. Olson filed on behalf of the defendant, the court is

unable to conclude that the parties cross-motions completely

satisfy the requirement that "there be no *genuine* issue of *material*

fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)

(emphasis in original).  The foregoing material matter articulated

by the defendant must be addressed at trial and subjected to cross-

examination, "which has been said to be the surest test of truth

and a better security than the oath."  The Hanover Ins. Co. v.

United States, 25 CIT ___, ___, Slip Op. 01-57, p. 21 (2001).

Thus, the parties' cross-motions for summary judgment must be, and they hereby are, denied.  Counsel are directed to confer and propose to the court on or before August 1, 2003 a schedule for the necessary preparation for, and conduct of, the trial of those issue(s) of fact which are not already agreed to herein and which cannot be stipulated to in the pretrial order.

So ordered.

Dated:  New York, New York
        June 25, 2003

—————————————————————
                                                        Judge