# United States Court of Appeals for the Federal Circuit

2007-1401

MILLENIUM LUMBER DISTRIBUTION LTD.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.


Joel R. Junker, Joel R. Junker & Associates, of Seattle, Washington, argued for plaintiff-appellant.  With him on the brief was William N. Baldwin.

Aimee Lee, Trial Attorney, Commercial Litigation Branch, Civil Division, International Trade Office, United States Department of Justice, of New York, New York, argued for defendant-appellee.  With her on the brief were Jeanne E. Davidson, Director, and Barbara S. Williams, Attorney in Charge, International Trade Field Office. Of counsel was Chi S. Choy, Attorney, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection, of New York, New York.

Appealed from:  United States Court of International Trade

Chief Judge Jane A. Restani

# United States Court of Appeals for the Federal Circuit

2007-1401

MILLENIUM LUMBER DISTRIBUTION LTD.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of International Trade in
case No. 02-00595, Chief Judge Jane A. Restani.

_____

DECIDED:  March 5, 2009

_____

Before MAYER, CLEVENGER, and RADER, Circuit Judges.

CLEVENGER, Circuit Judge.

This case involves the tariff classification of Canadian lumber imported into the United States by Millenium Lumber Distribution, Ltd. ("Millenium").  Millenium appeals the decision of the United States Court of International Trade granting summary judgment in favor of the United States ("the government") that the United States Bureau of Customs and Border Protection ("Customs") correctly classified Millenium's imported lumber under heading 4407 of the Harmonized Tariff Schedule of the United States ("HTSUS").  Millenium Lumber Distrib. Co. v. United States, No. 02-595, 2007 WL 1116148 (Ct. Int'l Trade April 16, 2007).  HTSUS heading ("heading") 4407 covers

certain "[w]ood sawn or chipped lengthwise, sliced or peeled, whether or not planed, sanded or finger-jointed, of a thickness exceeding 6 mm." In granting the government's motion, the court denied Millenium's cross-motion for summary judgment to classify the subject lumber under heading 4418, which covers "[b]uilders' joinery and carpentry of wood" or alternatively under heading 4421 which covers certain "[o]ther articles of wood." Millenium, 2007 WL 1116148, at *1, *7. We affirm.

I

Millenium imported approximately 215 entries of cut lumber between October 1999 and January 2001 under HTSUS subheading 4418.90.40. The imported merchandise included 2x3, 2x4, and 2x6 spruce/pine/fir lumber of various grades, cut to various even-foot lengths ranging from 5 to 20 feet. Each board had a 90° square-cut end, and an angle cut between 67.4° and 80.5° on the board's opposite end. Millenium, 2007 WL 1116148, at *1. According to Millenium, it sold all of the subject lumber to truss manufacturers, either directly or through wholesalers.[1]

In December 2000, Customs notified Millenium that it was classifying the subject merchandise under HTSUS subheading 4407.10.0015 rather than under Millenium's entered HTSUS subheading 4418.90.40. Customs liquidated the merchandise accordingly. Millenium filed two protests, which were both denied, and then commenced this action in the Court of International Trade pursuant to 28 U.S.C. § 1581(a). Millenium, 2007 WL 1116148, at *1

---

[1] A truss is a wood assembly that forms a rigid triangulated framework of wood used to support the roof or other parts of a building.

The parties filed cross motions for summary judgment. Millenium asserted that the imported merchandise was classifiable under heading 4418 as "[b]uilders' joinery and carpentry of wood" or alternatively under heading 4421 as "[o]ther articles of wood." The government maintained that Millenium's imported merchandise was standard dimensional lumber, classifiable under heading 4407 as "[w]ood sawn or chipped lengthwise . . . of a thickness exceeding 6 mm." The court agreed with the government and granted summary judgment accordingly. Millenium, 2007 WL 1116148, at *1, *7.

II

Millenium appeals the grant of summary judgment upholding Customs' classification of the imported lumber under heading 4407. Millenium asserts that the court should have instead granted Millenium's summary judgment motion and classified the lumber under heading 4418 or, in the alternative, under heading 4421. We have jurisdiction over Millenium's appeal pursuant to 28 U.S.C. § 1295(a)(5).

We review a grant of summary judgment by the Court of International Trade for correctness as a matter of law and decide de novo the proper interpretation of the tariff provisions as well as whether there are genuine issues of material fact to preclude summary judgment. Rollerblade, Inc. v. United States, 282 F.3d 1349, 1351 (Fed. Cir. 2002). In reviewing summary judgment decisions, we must bear in mind the parties' burdens as well as the evidentiary standards under the applicable law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986).

Proper classification of goods under the HTSUS entails first ascertaining the meaning of specific terms in the tariff provisions and then determining whether the subject merchandise comes within the description of those terms. Rollerblade,

282 F.3d at 1351. The proper meaning of the tariff provisions is a question of law, whereas the determination of whether the subject imports properly fall within the scope of the possible headings is a question of fact. Universal Elecs. Inc. v. United States, 112 F.3d 488, 491 (Fed. Cir. 1997). Because Customs' classification decisions are presumed correct, Millenium bears the burden of proving otherwise. See Rollerblade, 282 F.3d at 1351.

The General Rules of Interpretation ("GRIs") govern classification of merchandise under the HTSUS. N. Am. Processing Co. v. United States, 236 F.3d 695, 698 (Fed. Cir. 2001). Under GRI 1, the court must determine the appropriate classification "according to the terms of the headings and any relative section or chapter notes." The terms of the HTSUS are construed according to their common commercial meanings. Len-Ron Mfg. Co. v. United States, 334 F.3d 1304, 1309 (Fed. Cir. 2003). "Although the Explanatory Notes are not legally binding or dispositive, they may be consulted for guidance and are generally indicative of the proper interpretation of the various HTSUS provisions." N. Am. Processing, 236 F.3d at 698.

III

Heading 4407 provides for "[w]ood sawn or chipped lengthwise, sliced or peeled, whether or not planed, sanded, or finger-jointed, of a thickness exceeding 6 mm." The explanatory note to heading 4407 provides that "[w]ith few exceptions, this heading covers all wood and timber, of any length but of a thickness exceeding 6 mm." Note 44.07, Vol. 2, Explanatory Notes, World Customs Organization (2d ed. 1996) [hereinafter Explanatory Note]. Despite its breadth, heading 4407 excludes merchandise that meets heading 4418's more specific terms. Id. While the parties

agree that Millenium's imported lumber falls within heading 4407's broad terms, they dispute whether the merchandise also falls under the more specific heading 4418.

Heading 4418 covers "[b]uilders' joinery and carpentry of wood." The explanatory note to heading 4418 provides that "[t]his heading applies to woodwork, including that of wood marquetry or inlaid wood, used in the construction of any kind of building, etc., in the form of assembled goods or as recognizable unassembled pieces." 44.18 Explanatory Note. Carpentry includes woodwork "used for structural purposes or in scaffoldings, arch supports, etc." Id. To qualify as "recognizable unassembled pieces" of particular articles, the subject merchandise must be "dedicated solely or principally for use in those articles." Baxter Healthcare Corp. of P.R. v. United States, 182 F.3d 1333, 1339 (Fed. Cir. 1999). In addition, unassembled pieces must be more than just basic material generally suitable for use in the finished article. Rather, "if the item as imported can be made into multiple parts of articles, the item must identify and fix with certainty the individual parts that are to be made from it." Id.

In granting the government's motion for summary judgment, the court explained that the subject merchandise was not identifiable or fixed with certainty as unassembled truss pieces because "the evidence on the record demonstrates that there is no genuine issue as to the fact that some or all of the imported lumber would require significant additional processing in order to be assembled into completed wood trusses." Millenium, 2007 WL 1116148, at *4. In particular, the court explained that the even-foot-length boards would not generally be suitable for use without recutting because building plans seldom call for nothing but even-foot-length trusses. Millenium, 2007 WL 1116148, at *5. The court further explained that the subject merchandise was also not

sufficiently advanced to be dedicated solely or principally for use in completed wood trusses because the lumber maintained its identity and usefulness as general sawn lumber for potentially numerous purposes, notwithstanding the angle cuts on one end. Millenium, 2007 WL 1116148, at *6. Last, the court added that Millenium's imported lumber was not identifiable as particular pieces of any specific finished truss—as opposed to the general makings of trusses in the abstract—and therefore could not qualify as unassembled truss components under heading 4418. Id.

On appeal, Millenium asserts that summary judgment was inappropriate because it sees a factual dispute as to whether its imported lumber required recutting to be used in a final truss. Millenium points to testimony indicating that builders often splice two boards together to form a longer truss, thereby eliminating the need for angle cuts at both ends. Millenium also cites testimony from Customs' expert witness, Dr. Woeste, who, when asked if the lumber could be used in its exact length and with its existing precut angles by splicing two boards together at their square ends, responded that it was "possible." Millenium also submitted affidavit testimony from one of its customers who claimed that "[t]he angle cut truss components produced by Millenium Lumber Distribution Co. were used to manufacture trusses without re-cutting except for about 10% which was surplus to specific job needs or contained defects." In addition, Millenium proffered evidence that builders used the original angle cut without reshaping. Millenium asserts that together, this testimony created a material factual dispute, and that summary judgment was therefore inappropriate. We disagree.

The germane question is not whether Millenium's imported lumber can be used in a truss without recutting, but whether the subject lumber requires recutting before it is

sufficiently "recognizable" as unassembled pieces of a finished truss to warrant classification under heading 4418. <u>See</u> 44.18 Explanatory Note. It may have been possible to use the subject merchandise in finished trusses without recutting, and some of Millenium's customers may have used nearly all of the lumber it imported from Millennium to manufacture trusses without recutting as the testimony above indicates. This does not mean, however, that the subject merchandise was "dedicated solely or principally for use in" a finished truss so that the merchandise could be fairly characterized as "in the form of . . . recognizable unassembled pieces" of a truss. <u>See</u> <u>Baxter Healthcare</u>, 182 F.3d at 1339; 44.18 Explanatory Note. Millenium's proffered testimony, even taken as true, does not establish that the merchandise, in its as-imported condition "identify[ies] and fix[es] with certainty the individual parts that are to be made from it." <u>Baxter Healthcare</u>, 182 F.3d at 1339.

Because Customs' classifications decisions are presumed correct, Millenium bears the burden of proving otherwise. <u>Rollerblade</u>, 282 F.3d 1349, 1351. Yet, Millenium has offered nothing to belie the Court of International Trade's conclusion that "[b]ecause the merchandise maintained its identity and usefulness as general sawn lumber for potentially numerous purposes, it was not sufficiently advanced at the time of importation to be classified under 4418." <u>Millenium</u>, 2007 WL 1116148, at *6. Millenium does not dispute that the merchandise as imported was neither bundled as truss kits ready for assembly nor labeled as specific components of completed trusses. In its motion for summary judgment, Millenium acknowledged that each component "may be used either as a stand alone chord or attached to another truss component" and that "[t]russ manufacturers order and maintain an inventory of available truss components . .

. [and] may not know which specific truss design a truss component will go into." These statements show that the imported components are more raw material for trusses or other purposes generally than they are identifiable parts of a specific finished truss.

Millenium also contends, in the alternative, that its imported merchandise is sufficiently advanced beyond simple dimensional lumber to be classified under heading 4421. Heading 4421 covers "other articles of wood" but excludes any that are "specified or included in the preceding headings." 44.21 Explanatory Note. Therefore, simple dimensional lumber subject to classification under heading 4407 cannot fall under heading 4421. Millenium argues that its imported merchandise is too far advanced to be classified as standard dimensional lumber under heading 4407 because the lumber has "specified dimensions, minimal grade, Machine Stress Rating, minimal moisture content, species, and precision cut[s] at one end to particular angles." These characteristics, however, do not preclude classification under heading 4407.

The explanatory note to heading 4407 specifies that "[w]ith a few exceptions, this heading covers all [sawn, chipped or cut] wood and timber, of any length but of a thickness exceeding 6 mm." 44.07 Explanatory Note. As to the angle cut at one end of the lumber, 44.07's explanatory note specifies that "the wood of this heading need not necessarily be of rectangular (including square) section nor of uniform section along the length." Id. Millenium offers no further objection to Customs' classification under heading 4407. The imported merchandise therefore cannot be classified under heading 4421.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the United States Court of International Trade.

<u>AFFIRMED</u>