Slip Op. 10-74

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| | : | |
| CANEX INTERNATIONAL LUMBER SALES LTD., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Before: Jane A. Restani, Chief Judge |
| | : | |
| UNITED STATES, | : | Court No. 02-00596 |
| | : | |
| Defendant. | : | |
| | : | |

## OPINION

[Plaintiff's motion for summary judgment and cross-cross-motion for summary judgment denied; defendant's cross-motion for summary judgment granted.]

Dated: June 29, 2010

Joel R. Junker & Associates (Joel R. Junker) for the plaintiff.

Tony West, Assistant Attorney General; Barbara S. Williams, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Aimee Lee); Chi S. Choy, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection, of counsel, for the defendant.

Restani, Chief Judge: This matter is before the court on cross-motions for summary judgment by plaintiff Canex International Lumber Sales Ltd. ("Canex") and defendant United States ("the Government") pursuant to USCIT Rule 56. Canex claims that Customs' treatment of Canex's merchandise violated 19 U.S.C. § 1625(c) by effectively modifying or revoking two of Customs' prior ruling letters without proper notice and comment. Canex also challenges the tariff classification of its imported merchandise. U.S. Customs and Border Protection ("Customs"), formerly the U.S. Customs Service, classified the merchandise as sawn

**ERRATA**

Please make the following changes to <u>Canex International Lumber Sales Ltd. v. United States,</u> Court No. 02-00596, Slip Op. 10-74:

- pages 7–8: delete footnote 7.
- renumber the following footnotes accordingly.

August 3, 2010.

lumber under subheading 4407.10.0015 of the Harmonized Tariff Schedule of the United States

(2000) ("HTSUS").[1] Canex asserts that the proper classification is under subheading

4418.90.4020 as roof truss components, or alternatively under 4421.90.9840 as other articles of

wood.[2] For the reasons below, the court grants the Government's motion for summary judgment

---

[1] The relevant portion of Chapter 44 of the HTSUS reads:

4407   Wood sawn or chipped lengthwise, sliced or peeled, whether or not
      planed, sanded or finger-jointed, of a thickness exceeding 6 mm:
4407.10.00     Coniferous

. . . .

                Other:

. . . .

                    Not treated:
[4407.10.00]15               Mixtures of spruce, pine, and fir
                         ("S-P-F").

It should be noted that the numbering of relevant subheadings varies in subsequent versions of
the HTSUS, but will be cited here as used by the parties, and as listed when this dispute arose.

[2] The relevant portion of Chapter 44 of the HTSUS reads:

4418   Builders' joinery and carpentry of wood, including cellular wood panels
      and assembled parquet panels; shingles and shakes:
. . . .
4418.90       Other:
. . . .
4418.90.40          Other
. . . .
[4418.90.40]20               Roof trusses
. . . .
[4418.90.40]90               Other
. . . .
4421   Other articles of wood:
. . . .
4421.90       Other:
. . . .
                Other:

(continued...)

and denies Canex's motions.

## BACKGROUND

Between April and November 2000, Canex, a Canadian remanufacture/wholesale company for lumber products, entered the merchandise at issue at the Port of Blaine, Washington. (Pl.'s Rule 56 Statement of Material Facts Not in Dispute ("Pl.'s SMF") ¶¶ 1, 8; Def.'s Resp. to Pl.'s Statement of Material Facts Not in Issue ("Def.'s Resp. SMF") ¶¶ 1, 8; Mem. P. & A. Supp. Pl.'s Rule 56 Mot. Summ. J. ("Pl.'s Br.") Ex. A.) The merchandise consisted of 2x4 and 2x6 spruce-pine-fir ("SPF") machine stress rated ("MSR") lumber of lengths of six, eight, ten, twelve, fourteen, sixteen, eighteen, and twenty feet. (Pl.'s Cross-Mot. Rule 56 Statement of Material Facts Not in Dispute ¶¶ 2, 6; Def.'s Resp. to Pl.'s Cross-Mot. Statement of Material Facts Not in Dispute ¶¶ 2, 6.) The lumber was cut on one end at an angle of 67.4/22.6 degrees (5/12 pitch), 71.6/18.4 degrees (4/12 pitch), or 76.0/14.0 degrees (3/12 pitch) and square cut on the opposite end. (Def.'s Statement of Undisputed Material Facts ("Def.'s SMF") ¶¶ 2–3; Pl.'s Resp. to Def.'s Statement of Material Facts Not in Issue ("Pl.'s Resp. SMF") ¶¶ 2–3.) According to Canex, its customer, wholesaler Lignum Ltd., would ship the lumber to end user truss manufacturers in the United States.[3] (Pl's SMF ¶¶ 3, 10–11.)

After reviewing two prior classification rulings issued by Customs to other

_____

[2](...continued)
. . . .
4421.90.98                    Other
. . . .
[4421.90.98]40                        Other.

[3] Canex also sent one shipment of 2x3 stud grade lumber to another company. (Pl.'s Br. Ex. A, Attach. B, Ex. C, at 7.)

importers, Canex entered the merchandise as truss components under heading 4418, HTSUS. (Pl.'s Br. 6–7.)  Canex filed an end use statement with each entry summary certifying that the lumber was purchased for use as truss components and that the angle was used in finished trusses.  (Pl.'s SMF ¶¶ 23, 25; Def.'s Resp. SMF ¶¶ 23, 25.)  Occasionally, truss diagrams accompanied the end use statements.  (Pl.'s SMF ¶ 25; Def.'s Resp. SMF ¶ 25.)  Canex, however, never confirmed that the lumber corresponded to the truss diagrams.  (Def.'s SMF ¶ 8; Pl.'s Resp. SMF ¶ 8.)

Customs sent Canex a Notice of Action on Customs Form 29 ("CF 29") stating that the lumber was classifiable under heading 4407, HTSUS, and that Customs would assess liquidated damages if Canex did not submit within twenty days a permit for the merchandise required under the U.S. and Canada Softwood Lumber Agreement.[4]  (Pl.'s SMF ¶ 27; Def.'s Resp. SMF ¶ 27.)  Canex did not submit permits within the allotted time.  (Pl.'s SMF ¶ 30; Def.'s Resp. SMF ¶ 30.)  Customs subsequently liquidated the merchandise under heading 4407 and issued notices of liquidated damages.  (Pl.'s SMF ¶¶ 29–30; Def.'s Resp. SMF ¶¶ 29–30.)  Canex timely filed two protests, which Customs denied.  (Compl. ¶¶ 2–3; Ans. ¶¶ 2–3; see Pl.'s Br. Ex. A.)  In September 2002, Canex commenced the present action.

Canex moved for summary judgment, arguing that Customs' treatment of Canex's merchandise violated 19 U.S.C. § 1625(c).  (See Pl.'s Br. 3.)  The Government filed a cross-

---

[4] At the time, Customs' regulations required that a bond for importation and entry contain a condition that the principal agrees to "establish to the satisfaction of Customs" within twenty business days that the Government of Canada has issued an export permit for a softwood lumber product for which a permit is required under Softwood Lumber Agreement.  19 C.F.R. § 113.62(k) (2000).  If the principal defaults on that agreement, the obligors must "pay liquidated damages equal to $100 per thousand board feet of the imported lumber."  Id. § 113.62(l)(5).

motion for summary judgment on the grounds that the merchandise was properly classified under heading 4407.  (See Mem. Opp'n Pl.'s Mot. Summ. J. & Supp. Def.'s Cross-Mot. Summ. J. ("Def.'s Br.") 7–17.)  Canex subsequently filed a cross-cross-motion for summary judgment, alleging that the correct classification is under heading 4418, or alternatively, heading 4421. (See Mem. P. & A. Supp. Pl.'s Reply Def.'s Resp. Mot. Summ. J. with Respect to 19 U.S.C. § 1625(c), Pl.'s Resp. Gov't's Cross Mot. Summ. J. on Classification, & Pl.'s Further Cross Mot. Summ. J. on Remaining Classification Issues ("Pl.'s Reply Br.") 11–12.)[5]

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(a).  Summary judgment is appropriate if "there is no genuine issue as to any material fact," and "the movant is entitled to judgment as a matter of law."  USCIT R. 56(c).  The proper construction of a tariff provision is a question of law, and whether the subject merchandise falls within a particular tariff provision is a question of fact.  Franklin v. United States, 289 F.3d 753, 757 (Fed. Cir. 2002).  Where, as here, "the nature of the merchandise is undisputed, . . . the classification issue collapses entirely into a question of law," and the court reviews Customs' classification decision de novo.  Cummins Inc. v. United States, 454 F.3d 1361, 1363 (Fed. Cir. 2006).

## DISCUSSION

**I.      Customs' actions did not violate 19 U.S.C. § 1625(c).**

Canex claims that Customs' issuance of the Notice of Action on CF 29 and

---

[5] Canex's Reply to Defendant's Response on Cross Motion for Summary Judgment on Classification is stricken because it was filed late.  In any event, this document does not add anything meaningful to the court's understanding of the case.

liquidation of Canex's imports modified or revoked two of Customs' prior ruling letters, NY

B88564 and NY B81359, without proper notice and comment in violation of 19 U.S.C.

§ 1625(c).  (Pl.'s Br. 11–18.)  This claim lacks merit.

Section 1625(c) mandates that Customs "give interested parties an opportunity to

submit . . . comments" whenever Customs issues "[a] proposed interpretive ruling or decision

which would--(1) modify . . . or revoke a prior interpretive ruling or decision which has been in

effect for at least 60 days; or (2) have the effect of modifying the treatment previously accorded

by [Customs] to substantially identical transactions."  19 U.S.C. § 1625(c).  Although a ruling

letter may be an "interpretive ruling," id. § 1625(a), 19 C.F.R. § 177.9(b)(2) expressly provides

that a ruling letter classification applies only to articles that are identical to those in the ruling

letter, see 19 C.F.R. § 177.9(b)(2) ("Each ruling letter . . . will be applied only with respect to

transactions involving articles identical to the sample submitted with the ruling request or to

articles whose description is identical to the description set forth in the ruling letter.").

Canex's merchandise was not identical to the merchandise in NY B88564 and NY

B81359, which clearly were destined for specific use as part of a roof truss system.  NY B88564

describes lumber with "[m]ost pieces" cut at an angle other than 90 degrees on both ends and

states that each shipment was accompanied by illustrative literature showing how the pieces

were designed to fit together to make a roof truss.  See NY B88564 (Sept. 9, 1997).  NY B81359

describes lumber which was cut to specific sizes and angles that would "depend on the size of

the roof truss," and also was accompanied by diagrams that showed where the pieces would fit in

a completed roof truss.  See NY B81359 (Feb. 6, 1997).

By contrast, the intended end use of Canex's lumber was uncertain, as the pieces

neither appeared to be roof trusses, nor were accompanied by any illustration or diagram that would indicate placement in a completed roof truss. (See Moulds Dep. 152:23–155:22, July 24, 2009, available at Def.'s Br. Ex. 1.) Even in the occasional instances where Canex submitted a diagram, Canex never located where the angle cut pieces would fit within the particular diagram. (See id. at 154:1–4.) Unlike the merchandise described in the two ruling letters, all of Canex's lumber was cut to a specific angle only on one end. (See id. at 54:23–55:6.) Because the merchandise described in the ruling letters was not identical to Canex's, notice and comment pursuant to 19 U.S.C. § 1625(c) was not required.[6]

## II.     Customs properly classified Canex's merchandise.

Canex correctly identifies the only potentially applicable HTSUS headings: 4407, 4418, and 4421. (Pl.'s Reply Br. 11–12.) Of the three, heading 4407 is the proper classification.

The General Rules of Interpretation ("GRIs") of the HTSUS direct the proper classification of merchandise entering the United States. Orlando Food Corp. v. United States, 140 F.3d 1437, 1439 (Fed. Cir. 1998). Under GRI 1, HTSUS, "classification shall be determined according to the terms of the headings and any relevant section or chapter notes." The court is bound by the legal construction of the relevant HTSUS headings set forth in Millenium Lumber Distribution Ltd. v. United States, 558 F.3d 1326 (Fed. Cir. 2009) ("Millenium II").[7]

---

[6] Because the prior ruling letters did not properly apply to Canex's merchandise, the court need not determine whether the liquidation or Notice of Action on CF 29 would have constituted a proposed interpretive ruling or decision.

[7] The court is deeply concerned by the failure of Canex's counsel to cite Millenium II or the court's opinion in Millenium Lumber Distribution Ltd. v. United States, Slip Op. 07-56, 2007 WL 1116148 (CIT Apr. 16, 2007) ("Millenium I") as relevant authority in his initial

(continued...)

A.      **Heading 4407**

Heading 4407, HTSUS covers "[w]ood sawn or chipped lengthwise, sliced or peeled, whether or not planed, sanded or finger-jointed, of a thickness exceeding 6 mm."  It "serves as a general category," Millenium I, 2007 WL 1116148, at *2, which "[w]ith a  few exceptions . . . covers all wood," World Customs Organization, Harmonized Commodity Description & Coding System Explanatory Notes, Explanatory Note 44.07, 676 (2d ed. 1996) ("Explanatory Note(s)").[8]  The wood "need not necessarily be of rectangular (including square) section nor of uniform section along the length."  Id.  Canex's merchandise, which is sawn lumber meeting the thickness requirement, falls within heading 4407.  Accordingly, the court next considers whether the merchandise meets the more specific terms of heading 4418.  Items covered by heading 4418 are excluded from heading 4407.  Id.

B.      **Heading 4418**

Heading 4418, HTSUS covers "[b]uilders' joinery and carpentry of wood."  It "applies to woodwork . . . used in the construction of any kind of building, etc., in the form of

[7](...continued)
summary judgment papers, even though he was the plaintiff's counsel in that case.  See Wash. Rules of Prof'l Conduct R. 3.3(a)(3), available at http://www.courts.wa.gov/court_rules/?fa=court_rules.display&group=ga&set=RPC&ruleid=gar pc3.3 (last visited June 25, 2010) ("A lawyer shall not knowingly . . . fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel.").  It is of no moment that this matter is before the same judge.  There is no guarantee that cases will not be reassigned for administrative purposes, and each case record stands on its own.

[8] The World Customs Organization Explanatory Notes are not binding but "may be consulted for guidance and are generally indicative of the proper interpretation of the various HTSUS provisions."  N. Am. Processing Co. v.  United States, 236 F.3d 695, 698 (Fed. Cir. 2001).

assembled goods or as recognisable unassembled pieces (e.g., prepared with tenons, mortises, dovetails or other similar joints for assembly)." Explanatory Note 44.18, at 686. "[U]nassembled pieces must be more than just basic material generally suitable for use in the finished article." Millenium II, 558 F.3d at 1329. "To qualify as recognizable unassembled pieces of particular articles, the subject merchandise must be dedicated solely or principally for use in those articles." Id. (internal quotation marks and citation omitted); see also Finn Bros. v. United States, 454 F.2d 1404, 1406 (CCPA 1972) ("[I]f an item in its imported condition has been so far advanced beyond the stage of materials as to be dedicated to and commercially fit only for use as a particular article, it is properly classifiable, albeit in an unfinished condition, under the eo nomine designation for that article."). Additionally, "if the item as imported can be made into multiple parts of articles, the item must identify and fix with certainty the individual parts that are to be made from it." Millenium II, 558 F.3d at 1329 (internal quotation marks and citation omitted); see also Millenium I, 2007 WL 1116148, at *3 (holding that unassembled pieces must be "discernable as pieces of specific product structures, not just 'the making of [the products] in the abstract' (quoting Bendix Mouldings, Inc. v. United States, 388 F. Supp. 1193, 1194 (Cust. Ct. 1974)).

The court notes that the merchandise in this case is identical in all pertinent respects to the merchandise at issue in Millenium I and Millenium II (collectively, "Millenium"). In Millenium I, the court held that 2x3, 2x4, and 2x6 SPF lumber of even lengths, which was cut to a precise angle on one end and square cut on the other end and intended to be used in trusses, was correctly classified as standard dimension lumber under heading 4407 and was not classifiable under heading 4418. 2007 WL 1116148, at *1–7. The Federal Circuit affirmed on

appeal.  Millenium II, 558 F.3d at 1331.  As this case is materially indistinguishable, the court

follows the reasoning of those cases and reaches the same conclusion here.[9]

### 1.     The merchandise is not sufficiently advanced as to be dedicated solely or principally for use in roof trusses.

Canex has not argued that the imported merchandise was dedicated solely or

principally for use in roof trusses.  Even assuming that the testimony of Canex's expert witness

is true, Canex has not presented any evidence that its merchandise as imported is sufficiently

advanced beyond basic material generally suitable for use in a truss to be considered "carpentry"

under heading 4418.[10]  See Millenium II, 558 F.3d at 1329; Millenium I, 2007 WL 1116148, at

*5–6.  Like Millenium, see Millenium I, 2007 WL 1116148, at *6, Canex admits that its lumber

could be used by purchasers as ordinary dimension lumber through recutting for other purposes

subsequent to importation (Pl.'s Resp. SMF ¶ 10).  Canex, however, argues that the fact that

further recutting is required for the lumber to be used as ordinary dimension lumber renders it

something else.  (Pl.'s Reply Br. 22–24.)  This argument fails because "wood products not

processed beyond sawing and planing, etc., do not lose their character as lumber . . . unless they

are a new and different article, having a specific name and function . . . ."  Acme Venetian Blind

& Window Shade Corp. v. United States, 56 Cust. Ct. 563, 570 (1966).

Here, the reduction in material as result of the angle cut was negligible, as the

lumber could be recut for use in general construction as a stud, wall panel, floor truss, or roof

---

[9] The Government argues stare decisis applies.  That is likely so, but out of an abundance of caution the court addresses anew all arguments of plaintiff.

[10] Carpentry is "woodwork (such as beams, rafters and roof struts) used for structural purposes or in scaffoldings, arch supports, etc."  Explanatory Note 44.18, at 686.

truss.  (Woeste Report 4, 7, <u>available at</u> Def.'s Br. Ex. 4.)[11]  Although MSR graded lumber is of a higher grade than required in general construction and may be too expensive for most general use purposes, Canex's expert admits that the "MSR designation does not, in and of itself, determine the use of the lumber."[12]  (Runyon Report 6.)  The statements of intended use that Canex submitted also are not sufficient to meet the requirements of heading 4418.  <u>See</u> <u>Millenium I</u>, 2007 WL 1116148, at *5; <u>see also</u> <u>Benteler Indus., Inc. v. United States</u>, 840 F. Supp. 912, 917 (CIT 1993) ("[P]roof of use is not sufficient.").  Thus, the imported merchandise here, like the imported merchandise in <u>Millenium</u>, "was not sufficiently advanced at the time of importation to be classified under 4418" because it "maintained its identity and usefulness as general sawn lumber for potentially numerous purposes."  <u>Millenium I</u>, 2007 WL 1116148, at *6.

Canex has merely presented evidence that the merchandise as imported is suitable for use in two practices related to truss construction.  (<u>See</u> Pl.'s Reply Br. 17–20.)  The first, splicing, involves the joining together of the square ends of two shorter pieces of lumber via a metal connector to create a truss chord of a needed length.  (Runyon Report 5; Runyon Dep.

---

[11] Although plaintiff disagrees with the use of the conclusory term "negligible" and denies that the imported lumber has these possible uses, its own expert admits that the merchandise could have been recut for different functions.  (Runyon Report 7, <u>available at</u> Pl.'s Reply Br. Ex. 2.)  He states that "[w]ood is wood, and so long as the size and quality is sufficient, one can always use something made of wood for something different by re-cutting it."  (<u>Id.</u>)  Thus, Canex's position does not give rise to a <u>genuine</u> issue of material fact.

[12] According to Canex's expert, the stud grade lumber could only be used in the webs of trusses, which must be cut to precise lengths at the time of assembly.  (Runyon Report 4; Runyon Dep. 57:22–23, Mar. 25, 2010, <u>available at</u> Mem. Opp'n Pl.'s Cross-Mot. Summ. J. & Supp. Def.'s Cross-Mot. Summ. J. ("Def.'s Reply Br.") Ex. 1.)  The stud grade lumber therefore is not recognizable as part of a truss in its as-imported condition.

71:1–13, 92:11–93:24.)  Second, according to Canex's expert, a truss manufacturer that produces a finished truss will often leave the ends of a truss chord with overhangs uncut, or "wild," for trimming in the field after the truss has been installed.  (Runyon Report 4.)  Although Canex's imported merchandise could be used in splicing or as truss chords with "wild" tails subject to a certain level of trimming after installation, this "does not mean . . . that the subject merchandise was 'dedicated solely or principally for use in' a finished truss so that the merchandise could be fairly characterized as 'in the form of . . . recognizable unassembled pieces' of a truss." Millenium II, 558 F.3d at 1330 (citation omitted).

> **2.      The merchandise was not identifiable or fixed with certainty as truss components at the time of importation.**

The merchandise also was not identifiable or fixed with certainty as unassembled pieces of wood trusses at the time of importation.  Here, as in Millenium, the evidence demonstrates that there is no genuine issue as to the fact that some or all of the lumber as imported would require significant additional processing, including recutting, to be assembled into wood trusses.  See Millenium I, 2007 WL 1116148, at *4.  A truss consists of top chords, a bottom chord, and webs.  (Runyon Report 4.)  Canex's expert admits that bottom chords and webs must be cut to precise lengths at the time of assembly.  (Id.)  Canex's lumber, as imported in even-foot lengths, would thus require recutting or splicing, another significant alteration to the lumber, after importation to become bottom chords or webs.

Further, the only uses Canex cites for an even-foot length of lumber in top chord construction involve splicing or recutting.  Indeed, the practice of using the lumber as top chords

with "wild" tails necessarily requires recutting the lumber to a precise length in the field.[13] (Runyon Report 4.) According to Canex's expert, truss manufacturers maintained Canex's lumber in an inventory of available truss components. (Runyon Report 7; Runyon Dep. 82:9–13.) His company, one of the end users of the imported merchandise, otherwise keeps only square cut lumber as inventory. (Runyon Dep. 21:2–8.) Millenium II held that such evidence that the imported merchandise could be used in splicing and maintained in an inventory of truss components showed that the imported lumber was "more raw material for trusses or other purposes generally than . . . identifiable parts of a specific finished truss." 558 F.3d at 1330.

This is particularly true where the end user "may not know which specific truss design a truss component will go into." Id. (internal quotation marks omitted). Here, as in Millenium, Canex never located where its imported merchandise fit within a specific truss design, and its merchandise was not bundled as a truss kit or as specific components of completed trusses. See Millenium II, 558 F.3d at 1330. Thus, no reasonable fact-finder could find that the merchandise as imported was identifiable or fixed with certainty as unassembled truss pieces. Because the imported merchandise was not identifiable or fixed with certainty as roof truss pieces and was not sufficiently advanced to be dedicated solely or principally for use in roof trusses, it is not classifiable under heading 4418.

### 3. The imported merchandise is not sufficiently similar to beams,

---

[13] Although the Government's expert does not assert specifically that recutting is necessary to account for shrinkage or swelling resulting from exposure to heat or moisture during transport as he did in Millenium I, shrinking and swelling was only one of the several factors contributing to the need for recutting described in Millenium I. Id. at *4. The absence of that contention does not create a genuine issue of material fact here, as Canex claims. (Pl.'s Reply Br. 25–27.)

**rafters, and roof struts to be classified as carpentry.**[14]

Canex contends that the imported merchandise is classifiable as "carpentry" under heading 4418 as a matter of law because it is fundamentally the same as the beams, rafters, and roof struts listed as exemplars of carpentry in Explanatory Note 44.18. (Pl.'s Reply Br. 28.) Canex's comparison is based on the fact that each example is comprised of pieces of wood that meet species, grade, and load bearing tensile strength requirements and have dimensions and angle cuts necessary for structural purposes. (Id.) Nonetheless, species, grade, and load bearing tensile strength requirements are not specified by the terms of heading 4418 and Explanatory Note 44.18. Beams, rafters, and roof struts are exemplars of carpentry because they are the result of advanced processing. Each of these types of carpentry is cut to a specific length and has a unique set of cuts or other features distinguishing it from standard dimension lumber. (See Runyon Dep. 118:6–24, 54:21–55:4, 127:10–130:23; Woeste Rebuttal Report 4–5, available at Def.'s Reply Br. Ex. 2.) As discussed supra, although Canex's imported merchandise was angle cut on one end and could be used for structural purposes with additional recutting, the merchandise as imported does not fall within the terms of heading 4418. It is not a complex type of wood product as indicated by the words "carpentry" and "joinery." See Explanatory Note 44.18, at 686–87.

C.    **Heading 4421**

Canex alternatively asserts that if its merchandise is not classifiable under heading 4418, it should be classified under 4421 because it has parts and functions beyond

---

[14] There seems to be no contention that this merchandise is "joinery" under heading 4418.

standard dimension lumber.  (Pl.'s Reply Br. 28–30.)  Heading 4421, HTSUS covers "[o]ther articles of wood" but excludes "those specified or included in the preceding headings." Explanatory Note 44.21, at 688; see Millenium II, 558 F.3d at 1331.  Here, the court has established that Canex's merchandise falls under heading 4407.  The additional parts and functions to which Canex refers appear to be the MSR grade, species, load bearing tensile strength, and precision angle cut at one end of the lumber, none of which preclude classification under heading 4407.  See Millenium II, 558 F.3d at 1331; Explanatory Note 44.07, at 675–76. Because heading 4421 excludes merchandise specified under heading 4407, the merchandise cannot be classified under heading 4421.  Thus, under GRI 1, the merchandise is classified under heading 4407.

## CONCLUSION

For the foregoing reasons, the defendant's cross-motion for summary judgment is granted, and the plaintiff's motion for summary judgment and cross-cross-motion for summary judgment are denied.  Customs' classification of the subject merchandise under subheading 4407.10.0015, HTSUS, is sustained.

 /s/ Jane A. Restani  
Jane A. Restani  
Chief Judge

Dated: This 29th day of June, 2010.  
New York, New York.

**ERRATA**

Please make the following changes to <u>Canex International Lumber Sales Ltd. v. United States,</u> Court No. 02-00596, Slip Op. 10-74:

- pages 7–8: delete footnote 7.
- renumber the following footnotes accordingly.

August 3, 2010.