# United States Court of Appeals for the Federal Circuit

---

**WWRD US, LLC,**
*Plaintiff-Appellant*

v.

**UNITED STATES,**
*Defendant-Appellee*

---

2017-1945

---

Appeal from the United States Court of International Trade in No. 1:11-cv-00238-MAB, Judge Mark A. Barnett.

---

Decided: April 2, 2018

---

DANIEL J. GLUCK, Simon Gluck & Kane LLP, New York, NY, argued for plaintiff-appellant. Also represented by CHRISTOPHER M. KANE, MARIANA DEL RIO KOSTENWEIN.

BEVERLY A. FARRELL, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, New York, NY, argued for defendant-appellee. Also represented by CHAD A. READLER, ROBERT E. KIRSCHMAN, JR., JEANNE E. DAVIDSON, AMY RUBIN; SHERYL FRENCH, Office of the Assistant Chief Counsel, United States Bureau of Cus-

toms and Border Protection, United States Department of Homeland Security, New York, NY.

———————————

Before TARANTO, CLEVENGER, and CHEN, *Circuit Judges.*

CLEVENGER, *Circuit Judge.*

WWRD US, LLC ("WWRD") appeals the United States Court of International Trade's ("CIT") final decision denying WWRD's motion for summary judgment and granting the Government's cross-motion for summary judgment. In doing so, the CIT agreed with the U.S. Customs and Border Patrol's ("CBP") classification of WWRD's subject imports, finding the articles were not eligible for duty-free treatment. *WWRD U.S., LLC v. United States*, 211 F. Supp. 3d 1365 (Ct. Int'l Trade 2017). We affirm.

### BACKGROUND

Between October 2009 and February 2010, WWRD imported a series of decorative ceramic plates and mugs from its "Old Britain Castles" dinnerware collections; decorative ceramic plates and gravy boats from its "His Majesty" dinnerware collection; and crystal flutes, punch bowls, and hurricane lamps from its "12 Days of Christmas" collection. All of the subject imports had festive motifs, such as Christmas trees, hollies, or turkeys, and were intended to be used during Thanksgiving or Christmas dinner. Upon arrival in the United States, the CBP classified the articles based on their constituent materials, placing the various goods in subheadings 6912.00.39,[1]

———————————

[1] All references to the HTSUS refer to the governing provision determined by the date of importation. *See LeMans Corp. v. United States*, 660 F.3d 1311, 1314 n.2 (Fed. Cir. 2011). Because there were no material changes

7013.22.50, 7013.41.50, and 9405.50.40 of the Harmonized Tariff Schedule of the United States ("HTSUS"). WWRD filed multiple protests, arguing the articles should be classified in 9817.95.01, a duty-free subsection of the HTSUS covering certain festive goods. Specifically, HTSUS 9817.95.01 provides duty-free status for "[a]rticles classifiable in subheadings 3924.10, 3926.90, 6307.90, 6911.10, 6912.00, 7013.22, 7013.28, 7013.41, 7013.49, 9405.20, 9405.40, or 9405.50, the foregoing meeting the descriptions set forth below: Utilitarian articles of a kind used in the home in the performance of specific religious or cultural ritual celebrations for religious or cultural holidays, or religious festive occasions, such as Seder plates, blessing cups, menorahs or kinaras." After the CBP denied WWRD's protests, WWRD filed a complaint with the CIT, challenging the denials. WWRD argued that Thanksgiving and Christmas dinners are specific cultural ritual celebrations, its articles are used in the performance of such celebrations, and thus its articles belong in HSTUS 9817.95.01.

When presented with cross-motions for summary judgment, the trial court began by discussing the history of subheading 9817.95.01. Specifically, the court noted that, before the creation of subheading 9817.95.01, utilitarian items associated with holiday or festive occasions were classified within Chapter 95, under heading 9505. This heading provided broad duty-free coverage for "[f]estive, carnival or other entertainment articles," as interpreted by our line of cases beginning with *Midwest of Cannon Falls, Inc. v. United States*, 122 F.3d 1423 (Fed. Cir. 1997). However, in 2007, Chapter 95 was amended to add Note 1(v), which removed "[t]ableware, kitchenware, toilet articles, carpets, and other textile floor coverings,

---

to the relevant 2009 and 2010 provisions here, we cite to the 2009 version for convenience.

apparel, bed linen, table linen, toilet linen, kitchen linen and similar articles having a utilitarian function (classified according to their constituent material)" from the scope of Chapter 95. But Note 1(v) also referred to subheadings 9817.95.01 and 9817.95.05,[2] which provided duty-free status to a select subset of articles that would have lost such status under the Note. Thus, while many festive utilitarian articles are no longer eligible for duty-free status, those used "in the performance of specific religious or cultural ritual celebrations" are still eligible.

The parties disputed only whether WWRD's subject imports are used "in the performance of specific religious or cultural ritual celebrations," and therefore the trial court set about defining the scope of this phrase in subheading 9817.95.01. In assessing the phrase, the CIT analyzed the text of the subheading using the General Rules of Interpretation ("GRI"). But because the section and chapter of the HTSUS did not assist in defining the phrase, the court gave the terms in the subheading their ordinary meaning, with specific focus on the word "ritual."

The court concluded that Thanksgiving and Christmas are cultural holidays, and the associated dinners are cultural celebrations, but not specific rituals. The court found that "rituals generally encompass specific scripted acts or series of acts that are customarily performed in an often formal or solemn manner." *WWRD*, 211 F. Supp. 3d at 1375. While these dinners occur annually during religious or cultural holidays, that alone is not sufficient; the dinners themselves lack specific formal or solemn acts. *See id.* ("[I]f subheading 9817.95.01 was intended to

---

[2]   Subheading 9817.95.05 covers "[u]tilitarian articles in the form of a three-dimensional representation of a symbol or motif clearly associated with a specific holiday in the United States." This subheading is not involved in this case.

cover utilitarian items used in the home during religious or cultural celebrations, whenever they routinely occur, and whatever they might entail, the term 'ritual' could have been omitted altogether.").

The trial court then turned to the exemplars provided in the subheading – the Seder plates, blessing cups, menorahs or kinaras. Under the statutory construction rule of *ejusdem generis* ("of the same kind"), the trial court reasoned that the subject imports must "possess the essential characteristics or purposes that unite the [example] articles enumerated . . . ." *Id.* at 1376 (quoting *Sports Graphics, Inc. v. United States*, 24 F.3d 1390, 1392 (Fed. Cir. 1994)). The court distinguished the exemplars, which served specific purposes to advance their respective rituals, from the subject imports, which were "merely decorative items used to serve food and beverages or provide lighting." *Id.* According to the trial court, such general-purpose articles do not qualify as articles used in the performance of specific religious or cultural ritual celebrations.

The court denied WWRD's motion for summary judgment, and granted the Government's cross-motion for summary judgment. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5) (2012).

## DISCUSSION

"We review a grant of summary judgment by the [CIT] for correctness as a matter of law and decide *de novo* the proper interpretation of the tariff provisions as well as whether there are genuine issues of material fact to preclude summary judgment." *Millennium Lumber Distrib. Ltd. v. United States*, 558 F.3d 1326, 1328 (Fed. Cir. 2009) (citing *Rollerblade, Inc. v. United States*, 282 F.3d 1349, 1351 (Fed. Cir. 2002)). CBP classifications are presumed correct, and an appellant bears the burden of proving otherwise. *Id.* at 1330.

Classifying articles under the HTSUS is a two-step process. The Court first determines the proper meaning of specific terms in the tariff provisions, which is a question of law. *Id.* at 1328. Once the proper meaning of the tariff provisions are ascertained, the Court then determines which HTSUS subheading the subject goods are most appropriately classified under, which is a question of fact. *Id.* "If we determine that there is no dispute of material facts, our review of the classification of the goods collapses into a determination of the proper meaning and scope of the HTSUS terms that, as a matter of statutory construction, is a question of law." *Aves. in Leather, Inc. v. United States*, 317 F.3d 1399, 1402 (Fed. Cir. 2003).

"The HTSUS is composed of classification headings, each of which has one or more subheadings."[3] *R.T. Foods, Inc. v. United* States, 757 F.3d 1349, 1352–53 (Fed. Cir. 2014). We construe the terms of a tariff provision by applying the GRI "in numerical order." *Wilton Indus., Inc. v. United States*, 741 F.3d 1263, 1266 (Fed. Cir. 2013). Relevant here, the classification of subheadings is governed by GRI 6, which provides that "the classification of goods in the subheadings of a heading shall be determined according to the terms of those subheadings and any related subheading notes and, *mutatis mutandis*, to the above [GRIs] on the understanding that only subheadings at the same level are comparable." *See Orlando Food Corp. v. United States*, 140 F.3d 1437, 1442 (Fed. Cir. 1998). GRI 1, in turn, provides that "classification shall be determined according to the terms of the headings and any relative section or chapter notes." *See Millenium Lumber*, 558 F.3d at 1328–29. Terms in the HTSUS are

---

[3] "The first four digits of an HTSUS provision constitute the heading, whereas the remaining digits reflect subheadings." *Schlumberger Tech. Corp. v. United States*, 845 F.3d 1158, 1163 n.4 (Fed. Cir. 2017).

given "their common commercial meanings." *Id.* at 1329 (citing *Len-Ron Mfg. Co. v. United States*, 334 F.3d 1304, 1309 (Fed. Cir. 2003)).

We begin our analysis by determining the proper meaning of the tariff provisions: what constitutes an article used "in the performance of specific religious or cultural ritual celebrations." The trial court determined that the term "specific" modifies the term "ritual" (as opposed to "religious" or "cultural"), and that, consequently, "rituals generally encompass specific scripted acts or series of acts that are customarily performed in an often formal or solemn manner." *WWRD*, 211 F. Supp. 3d at 1375. We agree with the trial court that "specific" modifies the term "ritual," but emphasize that formality and/or solemnity, while relevant, are not required characteristics of all specific religious or cultural ritual celebrations.

WWRD attempts to distinguish "religious" from "cultural" rituals, arguing that a "cultural ritual" does not require the same "specific scripted acts or series of acts that are customarily performed in an often formal or solemn manner." The Government, on the other hand, argued below for a much narrower definition: that "rituals" require "formal actions and words that are repeated every year in the same fashion by everyone who celebrates these events." We find neither of these interpretations compelling.

While the parties provided numerous definitions of "ritual" from a variety of sources, we can derive two underlying requirements for religious or cultural rituals. First, a ritual must have some prescribed acts or codes of behavior. *See* Webster's Encyclopedic Unabridged Dictionary of the English Language 1661 (New rev. ed. 1996) ("Webster's") (defining "ritual" as: "1. an established or prescribed procedure . . . 2. a system or collection of . . . rites . . . 6. a prescribed or established rite, ceremony, proceeding, or service . . . 7. prescribed, established, or

ceremonial acts . . . 8. any practice or pattern of behavior regularly performed . . . 9. a prescribed code of behavior . . . "); *see also* Merriam-Webster's Collegiate Dictionary 1011 (10th ed. 1993) ("Merriam") (defining "ritual" as "1 : the established form for a ceremony; *specf*: the order of words prescribed . . . [2]b : a ceremonial act or action). Second, a ritual, in the context of this subheading, must have some cultural or religious meaning. *See* Webster's (defining "ritual" as involving "[1.] a religious or other rite . . . [3.] public worship . . . [7.] religious services . . . [9.] regulating social conduct . . . ."); *see also* Merriam (defining "ritual" as involving "religious law or social custom."). The trial court may then weigh other suggestive but non-dispositive factors, such as whether the prescribed acts or codes of behavior are performed in a formal or solemn manner, how widely recognized the prescribed acts or underlying meanings are, how established the organization performing the ritual is, what purpose the prescribed acts have in serving the organization or representing the cultural or religious meaning, among other considerations.

In this light, it appears WWRD presents a compelling argument that Thanksgiving and Christmas dinners are religious or cultural ritual celebrations, but that is not the end of our analysis. Subheading 9817.95.01 also requires "specific" ritual. "Specific" is defined as "free from ambiguity," Merriam, at 1128, or "[o]f, relating to, or designating a particular or defined thing; explicit," Black's Law Dictionary 1616 (10th ed. 2014). Thus, the court must look for specific, well-defined prescribed acts or codes of behavior having an unambiguous cultural or religious meaning.

Generally, WWRD argues that Thanksgiving and Christmas dinners involve "prescribed and specific acts and series of acts and their own particular cultural rituals and sub-rituals, which go beyond the gathering for and consumption of ordinary meals." For specificity, WWRD

argues the prescribed acts in Thanksgiving and Christmas dinner are: "gathering together at one location, not simply to enjoy a meal, but to celebrate in a traditional family or communal way; a holiday; the consumption of special food and drink . . . ; more formal table settings decorated with seasonable displays . . . ; and, at the heart of the event, the common, shared intent to continue to celebrate the particular holiday in a familiar and time honored way." But the last item concerning "intent" is not an act at all. The correct focus is on the acts that WWRD uses to define the ritual, and as the trial court found, those acts do not rise to the level of specificity required by subheading 9817.95.01.

The exemplars provided in the subheading illuminate what level of specificity is required. For instance, as the trial court noted in part, a Seder plate is used during Passover to hold six symbolic foods, where each food has a particular meaning and is generally accompanied by scripted prayer. In Christian teachings, a blessing cup holds wine that symbolizes or becomes the blood of Christ, and invokes scripted Communion liturgy. A menorah is a candelabrum having nine holders for nine symbolic candles, where a candle is lit for each night of Hanukkah, and is generally accompanied by scripted prayer. And finally, a kinara is a candelabrum having seven holders for seven symbolic candles: three green candles, three red candles, and one black candle. A candle is lit on each day of Kwanzaa, and each candle represents a particular "principle" of Kwanzaa.

Based on the terms of the subheading and the exemplars, we conclude that "gathering together" and "enjoying a meal" are too ambiguous. The proposed acts say nothing about the types of food or drink served, the types of settings or displays required, whether all families celebrate in the same or similar way, or what underlying cultural or religious meaning the specific acts represent. Families celebrating Thanksgiving and Christmas din-

ners do so in a variety of ways, using a variety of foods, and even at a variety of times in the day. The "prescribed and specific acts" promised by WWRD's general description of Thanksgiving and Christmas dinners are missing.

But even if the acts were specific enough, there is one further requirement presented by subheading 9817.95.01: the subject import must be "used . . . in the performance" of the ritual. WWRD would have us hold that an article that is used only for its utilitarian purpose, but also adds to the ambience of the event, constitutes use in the performance of the ritual. But it is not enough that a utilitarian article is merely used during the ritual. Instead, the use must advance or serve a particular purpose in the ritual. The exemplars make this clear: a Seder plate is used to present the six symbolic foods, a blessing cup holds the symbolic blood of Christ, a menorah is used to hold the nine symbolic candles, and a kinara is used to hold the seven symbolic candles. Assuming *arguendo* that Thanksgiving or Christmas dinners are specific rituals, the ritual of dinner will continue whether the serving trays and cups have festive motifs or not; the motifs themselves do nothing to further the ritual of dinner. Unless WWRD can point to specific prescribed acts having underlying religious or cultural meaning, where the subject imports are used in the performance of those acts, its imports are not eligible for duty-free status under subheading 9817.95.01.

The legislative history supports our conclusion that WWRD's subject imports do not fall within the scope of subheading 9817.95.01. This court's decisions before 2007 provided that similar utilitarian items associated with holiday or festive occasions would be classified as duty-free. *See, e.g.*, *Park B. Smith, Ltd. v. United States*, 347 F.3d 922, 928–29 (Fed. Cir. 2003). The addition of Note 1(v) in February 2007 rejected that broad scope of duty-free treatment of utilitarian holiday items, choosing language that preserved duty-free status only for a subset

of items that are used "in the performance of specific religious or cultural ritual celebrations." WWRD's interpretation of the new language would recreate much the same scope of duty-free treatment in this area that Congress abandoned in 2007.

## CONCLUSION

While we adopt a more flexible definition of "ritual" than the trial court, the trial court correctly determined that WWRD's subject imports do not fall within the scope of subheading 9817.95.01. Because WWRD failed to allege any disputes of material fact or dispositive errors of law, we affirm the trial court's decisions to deny WWRD's motion for summary judgment, and to grant the Government's cross-motion.

## AFFIRMED

### COSTS

No costs.